CHARLES F. FORSTER, Appellant, *vs.* THE BROWN HOISTING MACHINERY COMPANY, Appellee.

*Opinion filed December 16, 1914—Rehearing denied Feb. 3, 1915.*

1. PLEADING—*demurrer to a bill does not admit complainant's construction of written contract.* A demurrer to a bill admits the facts well pleaded but does not admit the complainant's conclusions nor the construction placed by him upon written contracts or correspondence made a part of the bill.

2. JURISDICTION—*what suits involving patents are within the jurisdiction of State courts.* Suits to recover royalties for the use of patents, suits for the specific performance of contracts for their use, and suits upon contracts governing the rights of parties in the use of patented inventions, are within the jurisdiction of the State courts.

3. SAME—*when State court has no jurisdiction.* A State court has no jurisdiction of a bill purporting to be for the specific performance of a contract involving a patent, where it appears from the bill that the complainant claims to be the inventor of the machine patented by the defendant's assignor, and that the question of the validity of the patent must be determined in order to settle the conflicting claims of the parties.

4. EQUITY—*bill is properly dismissed if remedy at law is adequate.* A bill purporting to be for the specific performance of a contract and an accounting is properly dismissed, where the indebtedness alleged to exist is a purely legal demand for the recovery of money under a contract, there is no complicated state of accounts between the parties, and nothing alleged in the bill showing that the complainant's rights cannot be as fully protected in an action at law as in a suit in equity.

5. SAME—*when laches is a good defense.* An unexcused delay of over twelve years by the complainant in seeking to enforce his alleged rights under a written contract, during which time the principal witness for the defendant has died, thereby greatly prejudicing the defendant in making its defense to the suit, is ground for the application of the equitable doctrine of *laches* and the dismissal of the bill.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. RICHARD E. BURKE, Judge, presiding.

Appellant, Charles F. Forster, filed his bill in the superior court of Cook county August 16, 1911, against appellee, the Brown Hoisting Machinery Company. The bill was subsequently twice amended, and a demurrer to the second amended bill was sustained and the bill dismissed for want of equity. On appeal to the Appellate Court for the First District the decree of the superior court was affirmed, and the case comes to this court on a certificate of importance granted by the Appellate Court.

The bill alleges Charles F. Forster, the complainant, is a resident of Cook county, Illinois; that the defendant, the Brown Hoisting Machinery Company, is a corporation organized in Delaware in 1900 and having its principal place of business in Cleveland, Ohio; that said company is the successor of the Brown Hoisting and Conveying Machine Company, organized in Ohio in 1881, the personnel of the management of the two corporations being the same; that Alexander E. Brown, who died in 1911, was an officer

and stockholder in the Ohio corporation and vice-president
of its successor, the defendant company, and that complain-
ant only learned of the death of said Brown after the prepa-
ration of the bill in this case was begun, and alleges that
neither the defendant company nor its predecessor had at
the time of the institution of this suit complied with the
Foreign Corporation act of Illinois.   The bill alleges that
before August 1, 1894, the complainant was the first in-
ventor of an improvement in pig-iron breaking apparatus
not known or used by others in this country or patented,
or described in any printed publication, or in public use or
on sale for more than two years prior to his application
for a patent therefor; that complainant called Alexander
E. Brown, then manager of the predecessor of defendant
company, into consultation about said improvement, and,
working under the direction of complainant, the said prede-
cessor of the defendant company, from August 1, 1894, to
January 1, 1899, built and put into operation at South Chi-
cago, Illinois, in the plant of the Iroquois Furnace Com-
pany, a pig-breaking apparatus embodying the ideas which
complainant had conceived, such ideas consisting of a pig-
breaking machine having horizontal plungers combined with
overhead carriers and a series of hooks connected to the
same for the purpose of grappling the sow and pigs from
the pig-bed of a cast-house, and thereby suspending the pigs
therefrom vertically from said overhead carrier during the
process of breaking said pigs from the sow.   It is further
alleged that certain correspondence attached to and made a
part of the bill shows that Brown recognized the priority
of the complainant's conception relative to the new and use-
ful improvement before mentioned.   The following written
agreement attached to and made a part of the bill was en-
tered into between complainant, the predecessor of defend-
ant company, and the Iroquois Furnace Company, of which
complainant was then general manager, February 17, 1899:

266 — 19

"It is hereby mutually agreed between the Brown Hoisting and Conveying Machine Company, a corporation, the Iroquois Furnace Company, a corporation, and C. F. Forster, that the several matters and things in dispute between them, growing out of the contract in relation to the sale and purchase of the pig-handling and breaking machinery erected by the Brown Hoisting and Conveying Machine Company at the plant in South Chicago of the Iroquois Furnace Company, are hereby compromised and settled upon the following terms, viz.:

"(1) The Iroquois Furnace Company is to pay, at the execution hereof, the sum of nine thousand seventy-two dollars and fifty-eight cents ($9072.58) as the balance of the full purchase price of $10,000, less the amount of the bill of the Iroquois Furnace Company for labor and material, amounting to $877.42, and also less $50 to cover sundry repairs.

"(2) The said hoisting company agrees to accept the accumulator heretofore furnished, f. o. b. cars Chicago, and to cancel their bill therefor, and also to pay for the accumulator weights an amount at the rate of $11 per net ton for the same; also to deliver, without charge, to the Iroquois Furnace Company, f. o. b. cars Chicago, the bronze bushings heretofore held by them for a formal order, as per correspondence.

"(3) In case, within two years from the date hereof, the said Charles F. Forster shall obtain United States letters patent on any invention by him which broadly covers the combination embraced in the pig-iron handling and breaking machinery as now constructed, then the said hoisting company agrees to make good to him all outlays by him for solicitors and government fees necessarily made in so obtaining or applying for such letters patent, and the said Forster agrees on his part to thereupon assign the said letters patent to the said hoisting company, its successors or assigns, and, upon such assignment to it, the said hoisting company agrees that it will allow and pay the said Forster, during the life of the assigned patents, a sum ranging between $2500 and $4000 for each and every complete pig-handling and breaking machine built by the said hoisting company under such assigned patents, the precise sum, within the above limits, to be in proportion to the capacity of the furnace in each case. In case said Forster tenders a written order for said complete machinery covered by the said patent assigned, from any reasonable party, and the said hoisting company for any reason declines to accept the same, then the said Forster shall have the right, on his own responsibility, to himself accept and fill such order unless the said hoisting company shall pay said Forster $500, and expenses, not exceeding $500 more, necessarily incurred by him in getting such order; and in case, under the above conditions, the said Forster accepts and executes such order, he shall have the full right to make, use and sell, for the purpose of such order, the pig-

handling and breaking machinery covered by the said patent, and such other patents of the said hoisting company as entered into the construction of said machinery at the plant of said furnace company in South Chicago at the date hereof. It is understood that the tender above referred to shall not oblige the said hoisting company to complete the machinery included therein in a shorter time than six months from date of its acceptance and the receipt of full information and dimensions. The said hoisting company is to furnish said Forster with one complete set of blue-prints covering the said handling and breaking machinery, to be used for the purpose of applying for the patents as above referred to.

"In testimony whereof the said Brown Hoisting and Conveying Machine Company, (by F. G. Tallman, its manager,) and the said the Iroquois Furnace Company, (by Chas. F. Forster, its general manager,) and said Chas. F. Forster for himself, have hereunto subscribed their respective corporate names and individual signatures at Chicago, Cook county, Illinois, on the seventeenth day of February, A. D. 1899.

THE BROWN HOISTING AND CONVEYING MACHINE CO.,

By F. G. Tallman, *Manager.*

THE IROQUOIS FURNACE COMPANY,

By Chas. F. Forster, *Gen. Manager.*

CHAS. F. FORSTER."

The bill alleges that the said agreement provided complainant should obtain the letters patent described and assign them to the Brown Hoisting and Conveying Machine Company, the predecessor of the defendant company; that complainant, in June, 1899, caused to be filed an application for the patent contemplated by the agreement, which application was attached to and made a part of the bill. The bill further alleges that, contrary to the letter and spirit of the agreement, Brown filed an application on or about March 30, 1899, for letters patent for a new and useful improvement in pig-breaking apparatus, and that on July 4, 1899, letters patent issued to Brown therefor, wherein and whereby said Brown claimed as new, seven combinations or parts of a pig-handling and breaking apparatus or machine specifically set out in the bill. The bill alleges the letters patent issued to Brown so completely covered complainant's invention for which, by the agreement of February 17,

1899, he was to secure letters patent, that when complainant, acting with expediency, applied for letters patent he was prevented from obtaining the same as contemplated by the agreement, and that the opinion of the patent commissioner, attached to and made a part of the bill, stated that nine of complainant's seventeen claims for letters patent had been met by the Brown patent. The bill further alleges that with full knowledge of all the facts, as an officer of the defendant company and individually, said Brown used the agreement of February 17, 1899, as a cloak behind which to conduct his operations to the injury of the complainant, and with one Wing, counsel for the defendant company and its predecessor, conspired in drafting and presenting the claims of Brown to the patent office securing the patent, which included therein the entire subject matter of the invention and patent contemplated by said agreement and exhibited in the machine built by defendant's predecessor under the direction of the complainant and installed at the plant of said Iroquois Furnace Company. The bill alleges these proceedings were fraudulent, contrary to and in violation of the agreement and of the conception and claims of complainant, of which defendant had knowledge; that said Brown assigned his right, title and interest in said patent to the predecessor of defendant company, which did not manufacture or sell any apparatus covered by said patent; that said company succeeded to the assets of the predecessor company, including said patent, and has manufactured and sold one hundred or more of said pig-breaking apparatus under and by virtue of either an assignment or license from Brown. The bill further alleges that, as shown by correspondence attached to and made part of the bill, the predecessor of defendant company endeavored to intimidate complainant by efforts to distinguish certain points relative to the invention of complainant, and that Brown fraudulently and knowingly applied for and obtained a patent covering the matters which

it was incumbent on complainant to obtain a patent for un-
der the terms of the agreement and for which complainant
did apply within two years mentioned in the agreement.
The bill alleges complainant is advised it is a presumption
of patent law that at the time Brown applied for the patent
subsequently received he knew the prior state of the art as
applied to cast-house mechanism and the invention of com-
plainant, and by his act in obtaining the patent of com-
plainant's invention became the agent of complainant, and
therefore the terms of the agreement of February 17, 1899,
were satisfied.   The bill alleges that had Brown obtained
patents for certain details to which he claimed the right,
there would have remained open to complainant the op-
portunity to obtain a patent based on the broad idea of
combining overhead carriers with hook attachments and a
pig-breaking machine, as contemplated by the said agree-
ment.  The bill alleges that under the opinion of the patent
commissioner refusing complainant's application for a pat-
ent it was impracticable to proceed through the channels of
the patent office, because it would have necessitated conduct-
ing interference proceedings against the persons with whom
he was obliged, under the agreement, to procure and assign
letters patent for an invention which Brown and the prede-
cessor of defendant company had fraudulently obtained a
patent for, and that complainant, acting on the advice of
counsel, refrained from then contesting with Brown or said
predecessor company the fraudulent method that had been
resorted to, because such procedure would have prevented
complainant from receiving the royalties set out and men-
tioned in the agreement, and the complainant being further
advised that the predecessor company, by fraudulently ob-
taining, through its officer, Brown, a patent covering com-
plainant's invention, the purpose of the agreement was ef-
fected and complainant entitled to its benefits.   The bill
alleges the patent issued to Brown covered the broad idea
before described and was a breach of trust and confidence

reposed in him by complainant, by which breach the defendant company, as assignee, by virtue of succession to the Brown Hoisting and Conveying Machine Company, should not be permitted to benefit. The bill alleges complainant has been advised that he could avail himself of his rights under the said agreement at any time during the life of the patent issued to Brown, and that, acting under such advice, he had elected to wait until the number of apparatus manufactured and sold by defendant company would warrant him in undertaking the expense of an equity proceeding. The bill alleges complainant has always been ready and willing to comply with the terms of the agreement, and that his inability so to do was only occasioned by the aforesaid act of the defendant and its predecessor; that early in 1911 complainant wrote defendant concerning the number of apparatus that had been manufactured and later demanded an accounting for royalties due him under the terms of the agreement, and that defendant admitted having all the rights under the Brown patent and admitted the manufacture and sale of apparatus to the number of one hundred or more but refused to account to complainant in any way. The bill prayed for specific performance of the contract of February 17, 1899, and asked that defendant be decreed to account and pay over to complainant the royalties unlawfully derived and obtained by it and its predecessor, and for any suitable further and other relief.

The demurrer to the bill, in addition to the general ground that the bill is without equity, assigned as special causes for demurrer that complainant, under the allegations of the bill, had an adequate remedy at law; that complainant had been guilty of *laches;* that the superior court of Cook county was without jurisdiction to adjudicate the question of the right and title to letters patent issued by the United States patent office, such jurisdiction being vested by the laws of the United States in the courts of the United States; and that complainant's allegations of fraud were

mere conclusions and no facts evidencing fraud were alleged in said bill.

SHEPARD, McCORMICK & THOMASON, (PERRY S. PATTERSON, of counsel,) for appellant.

GEORGE C. WING, and WINSTON, PAYNE, STRAWN &' SHAW, (WALTER H. JACOBS, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

The demurrer admitted the facts well pleaded but not appellant's conclusions nor his construction placed upon the contract and the correspondence made a part of the bill. That the parties did not understand the agreement alike is apparent from the correspondence between them, made part of the bill, which took place very soon after the agreement was signed. The agreement was not that appellant should obtain letters patent on an invention by him broadly covering the combination embraced in pig-iron handling and breaking machinery as then constructed and assign them to the hoisting company and receive a royalty therefor, but that if he did obtain letters patent within two years he would assign them. The correspondence between the parties very soon after the date of the agreement negatives any construction that Brown was acting for or on behalf of appellant in procuring letters patent. Appellee's predecessor company wrote appellant at length of its understanding of the agreement soon after it was made and what its understanding was as to the invention for which appellant proposed to apply for letters patent. He was also informed that the hoisting company had taken up with Brown the question of securing patents covering the apparatus at appellant's plant, the Iroquois Furnace Company; that it was Brown's intention to take out such patents as were invented and perfected by him and to apply at once for a patent "covering the method of handling the pigs and sow, with details pertaining to the same."

To the objection of appellee that the case directly involves the validity of the patent issued to Brown; that it is a case arising under the patent laws of the United States, and the superior court was therefore without jurisdiction, the appellant insists that the suit is upon the contract; that the patent is only collaterally involved, and that in such cases the State courts have jurisdiction. By section 711 of the United States Revised Statutes exclusive jurisdiction is given the Federal courts in all cases arising under the patent laws of the United States. Suits to recover royalties for the use of patents, suits for the specific performance of contracts for their use and suits on contracts governing the rights of the parties in the use of a patented invention have been held not to be suits under the patent laws, and in such actions State courts have jurisdiction. (*Pratt & Co.* v. *Paris Gas Light Co.* 155 Ill. 531; affirmed 168 U. S. 255; *Albright* v. *Teas,* 106 U. S. 613; *McMillan* v. *Bowers,* 102 Fed. Rep. 494.) While the prayer of the bill is based on the agreement, it is not claimed appellant performed it. He bases his right upon the claim that he was the author of the invention, which Brown appropriated by procuring letters patent in his own name. Here it appears from the face of the bill that there is an actual dispute between the parties as to the validity of the patent. If Brown is not the inventor his patent is invalid. Appellant claims he was the author of the invention, while appellee claims it was Brown's. Obviously, if appellant was not the author he would in no event be entitled to relief. The presumption is that the person to whom letters patent issue is the original and first inventor. (*Seymour* v. *Osborne,* 78 U. S. 516; *Elizabeth* v. *Pavement Co.* 97 id. 126.) It seems necessary to a determination of the conflicting claims to determine the validity of the patent. The Supreme Court of the United States said in *Excelsior Wood Pipe Co.* v. *Pacific Bridge Co.* 185 U. S. 282: "There is a complete distinction between a case and a question arising under the

patent laws. The former arises when the plaintiff in his opening pleading,—be it a bill, complaint or declaration,—sets up a right under the patent laws as ground for a recovery. Of such the State courts have no jurisdiction." Appellant sets up a right based upon the patent issued to Brown, and the determination of that claim cannot be made without deciding upon the validity of Brown's patent. We can come to no other conclusion than that this is a case under the patent laws and that State courts have no jurisdiction.

We are furthermore of the opinion that if the superior court had jurisdiction appellant had a complete and adequate remedy at law, and the demurrer was properly sustained upon that ground. There is no complicated state of accounts existing between the parties. Appellant is not indebted in any manner to appellee, the adjusting of mutual accounts is not involved and the methods peculiar to courts of equity are not required to be resorted to. (*Craig* v. *McKinney,* 72 Ill. 305; *County of Clinton* v. *Schuster,* 82 id. 137; *County of Cook* v. *Davis,* 143 id. 151.) The indebtedness alleged to exist is a purely legal demand for the recovery of money under a contract, and it does not appear from anything alleged in the bill that appellant's rights could not be as fully protected and enforced in an action at law as in a suit in equity.

Another special ground of demurrer was *laches* of appellant. The correspondence between the parties, made part of the bill, shows that in March, 1899, the Brown Hoisting and Conveying Machine Company wrote appellant its understanding of the agreement was, that if appellant procured a patent it would be for an invention broadly covering the combination embraced in the pig-iron handling and breaking machinery used in the appellant's plant. The correspondence further shows the hoisting and conveying machine company, in addition to explaining that its understanding of the agreement was that the invention referred

to in the agreement was for a broad combination then in use in appellant's plant, informed appellant that Brown would take out patents on the inventions perfected by him and which did not embrace the broad combination contemplated by the agreement. Appellant's application was filed on June 14, 1899, for letters patent based upon seventeen claims. His application was rejected by the commissioner of patents upon the ground stated in the commissioner's report or opinion that "the first twelve claims and 16 and 17 do not cover combinations," also that six of the seventeen claims had been anticipated by Kennedy and nine of them by Brown. This opinion was rendered to appellant July 11, 1899, and he did not avail himself of any of the means provided by law to establish the validity of his claim for letters patent. Not until twelve years later, and after the death of Brown, was any notice given appellee of appellant's claim or any proceeding begun by him to establish his claim. The death of Brown would necessarily be a great disadvantage to appellee in defending and decidedly advantageous to appellant in prosecuting his suit. There is no allegation in the bill which excuses or justifies the long delay. Whether the mere neglect of appellant to assert his claim with more diligence, in the absence of any circumstance arising which would prejudice appellee, would constitute *laches* need not be determined. Here the delay must be considered in conjunction with another circumstance,—the death of Brown,—which would seriously prejudice the appellee in defending against appellant's claim. The case seems to us a proper one for the application of the equitable doctrine of *laches,* and upon that ground the demurrer was properly sustained and the bill dismissed. *Morse* v. *Seibold,* 147 Ill. 318; *Thomas* v. *VanMeter,* 164 id. 304; *Winslow* v. *Leland,* 128 id. 304; *McLaurie* v. *Barnes,* 72 id. 73.

In our opinion the demurrer was properly sustained and the bill dismissed. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*