(No. 19892. )

JOHN O. MITZLAFF, Appellant, *vs.* THE MIDLAND LUMBER COMPANY *et al.* Appellees.

*Opinion filed February 21, 1930—Rehearing denied April 3, 1930.*

GEORGE W. THOMA, and EDWIN O. LINDEN, (ALFRED C. HOY, of counsel,) for appellant.

SANDERS, CHILDS, BOBB & WESCOTT, (DWIGHT S. BOBB, and F. M. HARTMAN, of counsel,) for appellees.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Appellant, John O. Mitzlaff, filed his verified bill in the circuit court of DuPage county on November 20, 1926, against one of the appellees, the Midland Lumber Company, seeking to establish an equitable lien against a part of lot 35 in Woodruff's re-subdivision of Villa Park, Illinois, for the value of certain improvements and buildings placed thereon by appellant. General and special demurrers to the bill were sustained by the court on October 5, 1928, and leave was granted appellant to file an amended bill on or before November 15, 1928. An amended bill was filed, making Edward H. Thomas and the Edward Hines Lumber Company additional parties defendant. General and special demurrers filed by the respective parties defendant were sustained by the court and a decree was entered dismissing the bill for want of equity. From that decree Mitzlaff has perfected an appeal to this court.

The amended bill alleges that on or about January 16, 1918, Mitzlaff was the owner and in possession of seven vacant lots described, in Woodruff's re-subdivision of Villa Park, Illinois; that complainant leased from the Villa Park Consumers Company a part of lot 35, in the same subdivision, for a period of five years from March 1, 1918, with the privilege of renewing the lease for an additional five-year term and the option of purchasing the property for a sum agreed upon, at any time during the term of the lease; that complainant entered into possession of lot 35 and erected valuable improvements, consisting of warehouses, driveways, bins, fences, barns and a dwelling house, for the purpose of conducting and carrying on a lumber and material-yard business, and that upon the completion of the improvements, during the latter part of the

year 1918, complainant entered into the business upon the premises of buying and selling lumber, lime, cement, gravel and other building materials, and while so engaged in said business, about July 21, 1922, the Midland Lumber Company called upon complainant and represented that it desired to purchase his plant and stock in trade and also the right or option to extend the term of the lease and the option to purchase the lands described in the lease, given to complainant by the Villa Park Consumers Company. The bill alleges that on July 21, 1922, complainant and the Midland Lumber Company entered into a written agreement for the sale of the material-yard business, the stock of merchandise, accounts receivable and the options in the lease, and the Midland Lumber Company paid to complainant at that time the sum of $5000 as part of the purchase money stated in the agreement; that the Midland Lumber Company was placed in possession and control of the real property and the material-yard business located thereon, in accordance with the terms of the written agreement. The bill alleges that by the written contract the Midland Lumber Company agreed to pay complainant $1620 per annum "as rent for the said premises and the said plant for the term beginning on the 21st day of July, 1922, and ending on the first day of March, 1926, or until the said defendant should exercise the option to purchase said lands and the said plant, and that in and by the said agreement it was further mutually understood, stipulated and agreed that the said defendant, Midland Lumber Company, should have, and thereby did acquire, your orator's option to extend said lease and to buy the said lands from the said Villa Park Consumers Company, and also that said Midland Lumber Company should have the option to buy said plant, together with the said lands, at and for the price of twenty-seven thousand ($27,000) dollars, as will more fully appear from the said lease and agreement in writing so made and entered into by and between your orator and the said defendant, Midland

Lumber Company." The bill then sets out the contract, as follows:

"Midland Lbr. Co., Freeport, Ill. "July 21st, 1922.

"DEAR SIRS—I offer you for sale the business located at Villa Park, Ill., a corporation operated as the Villa Park Lbr. Co., on basis of terms and conditions as follows:

"For the livestock, wagons, trucks, harness, tools, furniture and fixtures of every name and nature, including the good will of the business, I will take four thousand dollars. I will sell to you the accounts and notes receivable, payment or collection of which I guarantee to you unreservedly, which said accounts or notes I agree to redeem on your demand, for face value and accrued interest at seven per cent per annum from date hereof to date of redemption. The merchandise on hand shall be inventoried at the fair and reasonable wholesale value thereof on date of the inventory. I will make no charge for yardage and will allow no discount for cash. I will protect you in form and manner as you may require for your complete safety against the Ill. Bulk Sales law. You are to pay me the unearned premium on insurance policies computed on a *pro rata* basis from date of inventory.

"Taxes of 1922—Those assessed in 1922 but payable in 1923, on merchandise only, I will pay 7/12, or to Aug. 1st, 1922, you to pay 5/12, or from Aug. 1st, 1922, to Jan. 1st, 1923.

"Merchandise that is shopworn, damaged or obsolescent to be priced at reduced prices, sufficient to enable you to sell same in ordinary course of business and make the same per cent of profit.

"I will rent to you the lands and improvements thereon, including the residence on plant, all for the sum of sixteen hundred twenty dollars per annum, payable quarterly in advance. The terms of this lease to expire March 1st, 1926.

"I will give you an option to buy, on or before March 1st, 1926, the real estate for the sum of twenty-seven thousand dollars. In the event you do not exercise the option to buy the plant and do not buy it, then and in that case I agree to purchase the stock of merchandise from you at its fair and reasonable wholesale value on date of inventory for cash. I agree to purchase the equipment then on hand and good will on basis of value the same as it has been sold to you at this time, with reasonable allowance for depreciation. I agree to buy from you the scale that you may install, the improvements that you may make in the form of cement, plaster and stucco storage warehouse, coal handling equipment, sand and gravel handling equipment, at its total cost, including labor of all kinds incident to installation and building thereof not to exceed $2000, less ten per cent total depreciation for the period used up to March 1st, 1926.

"The legal description of the real estate referred to herein is lot 35 in Woodruff's re-subdivision, lots 141-142-143-144-145-146 and 147 in Woodruff's re-subdivision of Villa Park, Illinois. In event of sale to you of this real estate I agree to deliver title by warranty deed free of encumbrances, and to supply an abstract of title showing a merchantable title in me at time of making such deed, or in absence of abstract I will deliver title guaranteed by policy of Chicago Title & Trust Co. You may be asked to assume and pay a mortgage of record against the property not to exceed $2000 and interest, which you may charge against the purchase price. Inventory to be taken July 26, 1922.

"Yours truly,

JOHN O. MITZLAFF.

Accepted 7/21/22.—Midland Lbr. Co."

As shown by the original bill and as stated in the brief of counsel for appellant, the following endorsement appears upon the written agreement:

"Received from Midland Lbr. Co. five thousand dollars, check on Second Nat'l Bank, Freeport, Illinois, on acct. Balance to be paid on completion of inventory.

JNO. O. MITZLAFF.

Villa Park, Ill., 7-21-22."

The bill further alleges that the Midland Lumber Company continued in possession of the property, paying the agreed rental therefor, and continued to operate the business until about May 31, 1927, at which time, conspiring with Edward H. Thomas and the Edward Hines Lumber Company, the other appellees in this cause, to deprive complainant of his rights in the lands and material-yard business, the Midland Lumber Company turned over the possession of the lands and business to the other appellees and caused the lands and business plant to be conveyed to Thomas by deed dated January 16, 1928; that at the time of such conveyance and delivery of possession Thomas and the Edward Hines Lumber Company knew that the Midland Lumber Company was not the owner of the property but that it held the premises and business plant as tenant of complainant and that appellees had no title to the lands

or business plant as against complainant. The bill also alleges that complainant has always been ready and willing to perform each and all of the terms of the written agreement between himself and the Midland Lumber Company upon the payment to him of the balance of the purchase price. The bill states that Thomas and the Edward Hines Lumber Company wrongfully and fraudulently claim to own the lands and the improvements erected thereon; that the deeds purporting to convey title to the business plant should be set aside and decreed to be void; that Thomas, who is named as the grantee in the deed of January 16, 1928, should be declared to hold title to the lands in trust for complainant and the Midland Lumber Company for the purpose of carrying out and performing the covenants contained in the written agreement between the parties; that the Midland Lumber Company should be required to specifically perform the written agreement between it and complainant and to pay to the latter the remainder of the purchase money. The bill prays for an accounting of the moneys remaining due and unpaid to complainant under the terms of the written agreement between him and the Midland Lumber Company; that the Midland Lumber Company be required to specifically perform the contract between the parties and to pay the balance due thereunder, and that in default of such payment the conveyances to Thomas and the Edward Hines Lumber Company be set aside and possession of the premises be surrendered to complainant.

The demurrers to the amended bill, in addition to the general ground that the bill is without equity, assigned as special causes for demurrer that the bill is uncertain, incomplete, insufficient and contradictory and that complainant had an adequate remedy at law.

A reading of the allegations made in the amended bill and a consideration of the provisions of the written agreement, which is set out therein verbatim, clearly disclose

that there are allegations made which are not warranted by the terms of the contract. There was no provision in the agreement between the parties that the Midland Lumber Company would occupy the premises until it "should exercise the option to purchase said lands and the said plant." Its right of occupancy and the privileges extended to the company under the terms of the agreement were to expire on March 1, 1926. Neither did the agreement state or infer that the Midland Lumber Company was to acquire thereunder any rights of the complainant for the extension of his lease upon, or the option to purchase, that part of lot 35 in Villa Park here involved. The endorsement made upon the written agreement as set out in the brief of counsel for appellant and also appearing in the original bill, warrants the conclusion that the $5000 payment alleged in the amended bill to have been made by the Midland Lumber Company on the same day the agreement was executed or accepted by it was a payment made on account for the personal property involved in the deal. The receipt plainly states that the payment was made on account and the balance was to be paid on completion of the inventory of the merchandise, which inventory, under the provision of the written contract, was to be taken July 26, 1922. The demurrers admitted the facts well pleaded but not appellant's conclusions or his interpretation of or construction placed upon the contract. *Forster* v. *Brown Hoisting Machinery Co.* 266 Ill. 287; *Big Creek Coal Co.* v. *Tanner,* 303 id. 297.

The amended bill shows that appellant had no interest in that part of lot 35 here involved except under an alleged lease from the Villa Park Consumers Company. That lease was made in 1918 for a five-year period, with privilege of renewal at the expiration date for a further five years and with the option of purchasing the tract at an agreed price during the life of the lease. There is no allegation that appellant ever exercised his option to extend the lease be-

yond the year 1923 or to purchase the property, and nothing appears to show that appellant had any right or interest whatever in the property at the time of the alleged conspiracy of Thomas and the Edward Hines Lumber Company in May, 1927, or in January, 1928, when Thomas is alleged to have received a deed to the property. The amended bill contains no allegation that the Midland Lumber Company ever exercised its option to purchase the real estate under the terms of the written agreement or that appellant tendered performance at any time in so far as the sale of the real property was concerned. There is no allegation in the amended bill as to the manner in which the Midland Lumber Company received title, if it did, to lot 35 or to the other seven vacant lots which were the property of appellant or as to how valid title to all of the property was conveyed to the other two appellees. Some of the facts necessarily involved are indeed vague and uncertain and are left entirely to conjecture or surmise.

The action instituted by appellant is based upon the written agreement between him and the Midland Lumber Company. The latter was given an option to buy, on or before March 1, 1926, the real estate described, being the part of lot 35 having improvements thereon, and seven vacant lots, for the sum of $27,000. An option contract is one by which the owner of property agrees with another person that the latter shall have the right to buy the former's property at a fixed price within a certain time. The owner does not then sell his land or any interest in it, or agree to sell, but he does sell the right or privilege to buy at the option of the other party. The second party gets, *in præsenti*, not lands or an interest therein or an agreement that he shall have lands, but the right to call for and receive lands if he so decides. (*Keogh* v. *Peck,* 316 Ill. 318.) There is no allegation in the amended bill that the Midland Lumber Company exercised its option to buy, and hence there could be no part of the purchase price due.

Appellant never tendered performance on his part relative to the sale of the real estate, and was not in position to do so as he had no title to lot 35. Counsel contend the Midland Lumber Company, as lessee of lot 35, could not deny the title of the lessor. That rule has no application when the landlord's title has terminated since the relation of landlord and tenant began. (*Spafford* v. *Hedges,* 231 Ill. 140; *Corrigan* v. *City of Chicago,* 144 id. 537; 35 Corpus Juris, sec. 585, p. 1239.) The same rule applies in case of a sub-tenant. (35 Corpus Juris, sec. 596, p. 1244.) It was not in the power of appellant to perform the agreement, and that was sufficient reason for the court to sustain the demurrers. *Burke* v. *Mierenfeld,* 300 Ill. 188.

In our opinion the demurrers to the amended bill were properly sustained and the bill dismissed.

The decree of the circuit court is affirmed.

*Decree affirmed.*