ROBERT O'BRIEN, d/b/a O'Brien and Associates, Plaintiff-Appellee, *v.* BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 189, EAST ST. LOUIS, Defendant-Appellant.

Fifth District   No. 78-38

Opinion filed April 10, 1979.

Edward L. Welch, of Edwardsville, for appellant.

David J. Letvin and Jack Carey, both of Cohn, Carr, Koerein, Kunin, Schlichter & Brennan, of East St. Louis, for appellee.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant Board of Education of School District No. 189, East St. Louis, Illinois, appeals from a judgment rendered against it in a St. Clair County bench trial for breach of contract. The trial court specifically found that there was a contract between plaintiff, Robert O'Brien & Associates, and the Board of Education of School District No. 189, and subsequently awarded damages in the amount of $169,358 for breach of that contract.

The facts of this case are basically undisputed. In August 1972 District No. 189 advertised for bids for the processing of its payroll. O'Brien & Associates, a computer and electronic data processing firm,

submitted a service agreement along with its bid in response to the advertised project. O'Brien's bid was accepted by District No. 189, and plaintiff began performance pursuant to the terms and conditions of the service agreement on September 1, 1972. The "Term of Agreement" contained in O'Brien's service agreement provided for a working relationship of three years and "Two 1-Year Options." O'Brien & Associates performed the payroll processing function to the satisfaction of the District through the three-year contract term, that is, until August 31, 1975. The dispute presented here concerns only the relationship of the parties from September 1, 1975, through September 1, 1977.[1] This is the period of time which falls under the two one-year options contained in the "Terms of Agreement."

O'Brien & Associates continued to process District No. 189's payroll subsequent to September 1, 1975. The working relationship continued smoothly until O'Brien learned of the District's plans to establish an in-house computer system capable of performing the payroll processing function that his firm was currently furnishing. O'Brien expressed his concern with the District's plans in a letter to Superintendent Ducksworth date April 14, 1976, in which he requested that "the District's Board review and determine to what extent and for how long a period of time will the services of our firm be required." Included in that letter was a statement of O'Brien's understanding of the working relationship between his firm and the District:

"During the last number of years our firm has operated under a verbal contract, which is automatically renewable on an indefinite continuing basis as long as our firm's services were maintained on a high degree of efficiency, accuracy, and promptness."

Peter Yasitis, the business manager of District No. 189, responded to O'Brien's inquiry in a letter dated April 22, 1976. Yasitis informed O'Brien that the District's computer would begin the payroll processing function on July 1, 1976. He further informed O'Brien that "[w]e intend to phase out your services in July."

O'Brien & Associates continued the payroll processing of the District through June 30, 1976. In a letter dated June 24, 1976 to Yasitis, O'Brien set out a number of conditions to be met before his firm would process any additional payroll for the District. Condition 4 is particularly enlightening as to O'Brien's view of the working relationship at that particular time.

"Since termination by District 189 has been established by your letter of June 23, 1976, our firm will under no condition expend

---

[1] While the court erroneously granted damages for lost profits through December 31, 1977, the plaintiff in his brief concedes the mistake and requests that the amount of the judgment be adjusted to reflect the miscalculation.

time to alter, add, or convert systems, programs, and reports associated with your operation."

Moreover, O'Brien conditioned delivery of the June 30 payroll upon advance receipt of the balance due and owing for the processing of the June 15 payroll and payment of $3228.08 on delivery of the June 30 payroll. Departing from prior practice, O'Brien refused to deliver the checks to the District but rather delivered them to his own attorney. No additional work was given by the District to O'Brien & Associates after June 30, 1976.

■■ At trial plaintiff contended that the failure of the District to pay the outstanding balance of $3228.08 and to supply additional work to O'Brien & Associates constituted a breach of contract. From September 1, 1972, through September 1, 1975, both parties performed pursuant to the terms of the service agreement. However, the trial court held that defendant breached the contract in 1976 and awarded damages for the remainder of the two option terms. It is essential to recognize that at all times pertinent to this case the parties were operating within the option provision of the service agreement. Our construction of this provision disposes of all contentions on appeal.

The supreme court in *Morris v. Goldthorp* (1945), 390 Ill. 186, stated:
"An option is correctly defined as a right acquired by contract to accept or reject a present offer within the time limited. In such contract two elements exist: first, the offer to sell, which does not become a contract until accepted; second, a contract to leave the offer open for the specified time." (390 Ill. 186, 191, 60 N.E.2d 857, 859.)

"It is clearly apparent that an option is a contract and must, therefore, necessarily contain all the incidents of a contract * * *." (*Whitelaw v. Brady* (1954), 3 Ill. 2d 583, 589, 121 N.E.2d 785, 789.) The purported option clause fails to set out critical terms and conditions of the option. Conspicuously absent is a provision regarding the time and mode of exercising the option. Courts strictly construe an attempt to accept the terms offered under an option. (Williston on Contracts §61; *Southwest Forest Industries, Inc. v. Sharfstein*, 482 F.2d 915 (7th Cir. 1972).) Although the absence of such terms is not fatal to the validity of the contract, we shall imply a reasonable time and mode of acceptance limitation. Here the plaintiff wholly failed to notify the defendant that it wished to exercise the first one-year option. Hence, the option lapsed within a reasonable time after September 1, 1975.

"Except in the case of an automatic renewal, * * *, the fact that the parties by their acts and declaration indicate an intention to treat a written contract as continuing after the time prescribed in it

for its termination will not have the effect of continuing such contract, although it may show a subsequent oral agreement on the same terms." 17A C.J.S. *Contracts* §449 (1963).

Our conclusion is bolstered by another fundamental rule of contract construction, namely, that in construing an indefinite contract a court will look to and adopt the interpretation which the parties themselves have placed on it. (*Cedar Park Cemetery Association, Inc. v. Village of Calumet Park* (1947), 398 Ill. 324, 75 N.E.2d 847; 12 Ill. L. & Prac. *Contracts* §232 (1955); *Berry v. Blackard Construction Co.* (1973), 13 Ill. App. 3d 768, 300 N.E.2d 627.) The tenor of the correspondence between the parties in this case reveals that the plaintiff himself considered the relationship capable of termination prior to the end of the option period.

■■ ■ The receipt of and the processing of the data supplied by the District after August 31, 1975, indicated the willingness of O'Brien & Associates to continue the working relationship with District No. 189. Thus from September 1, 1975, through June 1976 the parties were operating under a contract which specified no period of duration. Executory contracts of indefinite duration are terminable at the will of either party. (*S & F Corp. v. American Express Co.* (1978), 60 Ill. App. 3d 824, 829, 377 N.E.2d 73.) In our opinion, the letter written by Yasitis to O'Brien dated April 22, 1976, advising O'Brien of the District's plans to phase out the services of O'Brien & Associates in July provided adequate and reasonable notice to the plaintiff.

■■ The only remaining question is whether the plaintiff is entitled to the sum of $3228.08 for preparation of the June 30 payroll. Since the plaintiff had performed this work and since the contract was coming to an end, we find that plaintiff's insistence upon payment prior to the delivery of the June 30 payroll was justified.

For the foregoing reasons the judgment of $169,358 entered against the defendant is reduced to $3228.08.

Affirmed in part and reversed in part.

KUNCE and KASSERMAN, JJ., concur.