No. 2-09-0269     Filed: 4-28-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE TERRACES OF SUNSET PARK, LLC, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 08--MR--257 |
| | ) | |
| THOMAS CHAMBERLIN and DIANE | ) | |
| DORIGAN, | ) | Honorable |
| | ) | David M. Hall, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, The Terraces of Sunset Park, LLC (The Terraces), appeals from the judgment of the trial court dismissing its second amended complaint. We affirm.

On September 8, 2006, The Terraces entered into an agreement with defendants, Thomas Chamberlin and Diane Dorigan, to purchase their property at 739 Elm Place in Highland Park for $1,750,000. According to the written agreement, the parties desired "to memorialize their basic agreement on the sale and purchase of the property to be supplemented by the preparation of additional documents to supplement this sale contract." The Terraces was to pay $50,000 when the agreement was signed and $50,000 on May 1, 2007, as a down payment. If The Terraces failed to make the May 2007 installment, the initial $50,000 would be forfeited and the transaction would be null and void. Both installments, once paid, were to be "NON-REFUNDABLE" and were to be deducted from the purchase price at closing. Closing was scheduled for August 1, 2007,

"exclusively." If The Terraces failed to close on that date, the down payment would be forfeited, and the transaction would be null and void.

The Terraces also provided a preprinted "Multi-Board Residential Real Estate Contract 4.0," which Chamberlin and Dorigan accepted on September 12, 2006. The contract included the purchase price of $1,750,000 and the closing date of August 1, 2007. The balance of the purchase price, adjusted by prorations, was due at closing, by wire transfer, certified check, or cashier's check. However, The Terraces never signed this contract.

The Terraces made the scheduled payments totaling $100,000, but the sale did not close. On July 27, 2007, The Terraces notified Chamberlin and Dorigan that, as it had never signed the real estate contract, no contract existed. Therefore, The Terraces was entitled to a refund of "the earnest money deposit." Alternatively, assuming that a valid contract existed, The Terraces declared the contract terminated because Chamberlin and Dorigan failed to furnish an "Illinois Residential Real Property Disclosure Report" as required by the Residential Real Property Disclosure Act (Act) (765 ILCS 77/1 et seq. (West 2006)).

On March 3, 2008, The Terraces filed a three-count complaint seeking declaratory judgment and money damages. On November 6, 2008, after various motions were filed and causes repleaded, The Terraces filed its second amended complaint. Count I sought a declaratory judgment that the September 8, 2006, agreement was not a valid and enforceable agreement and that The Terraces was entitled to a return of the $100,000 down payment. In count II, argued in the alternative, The Terraces alleged that Chamberlin and Dorigan violated the Act (765 ILCS 77/1 et seq. (West 2006)), thus allowing The Terraces to terminate the contract and demand return of the down payment. In count III, The Terraces alleged, in the alternative, unjust enrichment.

On December 17, 2008, Chamberlin and Dorigan filed a motion for judgment on the pleadings as to count I and a motion to dismiss counts II and III. Following argument, the trial court granted both motions on February 11, 2009. The trial court found that the September 8, 2006, agreement was "unambiguous" and was "a fully integrated and enforceable agreement granting an option to [The Terraces] to purchase the subject property." The court also specifically found that the agreement was unambiguous in that the installment payments were nonrefundable once paid and that Chamberlin and Dorigan were entitled to retain the $100,000. In addition, the trial court found that, since the agreement was an option agreement, it was not subject to the Act. This appeal followed.

## STANDARD OF REVIEW

Chamberlin and Dorigan's motions were brought pursuant to sections 2--615(e) and 2--619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2--615(e), 2--619(a)(9) (West 2008)). We review de novo the trial court's decisions regarding motions brought pursuant to both of these sections. See Gillen v. State Farm Mutual Automobile Insurance Co., 215 Ill. 2d 381, 385 (2005) (section 2--615(e) motion for judgment on the pleadings); Lacey v. Village of Palatine, 232 Ill. 2d 349, 359 (2009) (section 2--619(a)(9) motion to dismiss).

## ANALYSIS

The trial court granted judgment on the pleadings on count I of the second amended complaint. A motion seeking judgment on the pleadings is like a motion for summary judgment limited to the pleadings. Employers Insurance of Wausau v. Ehlco Liquidating Trust, 186 Ill. 2d 127, 138 (1999). Judgment on the pleadings is proper where the pleadings disclose that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Employers Insurance of Wausau, 186 Ill. 2d at 138. In ruling on such a motion, the court will

consider only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record. Gillen, 215 Ill. 2d at 385. We take as true all well-pleaded facts and reasonable inferences drawn therefrom. Gillen, 215 Ill. 2d at 385.

The Terraces first contends that in the trial court Chamberlin and Dorigan took inconsistent positions regarding the nature of the agreement, changing their characterization of it from (1) a valid, fully integrated, and enforceable real estate contract to (2) an option contract. However, even if this is true, it is irrelevant. Our de novo review of the trial court's judgment on Chamberlin and Dorigan's motion does not depend upon the parties' prior characterizations.

The Terraces next contends that the agreement was not a fully integrated, enforceable contract for the sale of the property. We agree. It is essential in pleading the existence of a valid contract to allege facts sufficient to indicate the terms of the contract. Sherman v. Ryan, 392 Ill. App. 3d 712, 732 (2009). The agreement provided the parties, the address of the property, the purchase price, the down payment, the closing date, and the acceptable methods of paying the balance of the purchase price. However, the agreement did not provide for the transfer from Chamberlin and Dorigan to The Terraces of any equitable right or interest in the property. The Terraces could have walked away from the proposed deal at any time prior to closing while only forfeiting part or all of the down payment; the failure to make the May 1, 2007, payment or to close on August 1, 2007, would render the transaction "null and void." Thus, Chamberlin and Dorigan could not seek specific performance to order The Terraces' purchase of the property. The agreement was not an enforceable contract for the sale of the property.

The Terraces next contends that the trial court erred in finding that the agreement was an enforceable contract granting an option to purchase the property. An option contract is an agreement

in which one party (the optionor), based upon consideration given to him by the optionee, binds himself to perform a certain act, at the sole power and discretion of the optionee to accept upon terms specified, at which time it is converted from a bilateral to a unilateral contract and cannot be withdrawn by the optionor during the option period. See Perlman v. Westin Hotel Co., 154 Ill. App. 3d 346, 349-350 (1987); The Prime Group, Inc. v. Northern Trust Co., 215 Ill. App. 3d 1065, 1070 (1991). The owner does not then sell or agree to sell his property or any interest in it, but he sells the right or privilege to buy at the option of the other party. Whitelaw v. Brady, 3 Ill. 2d 583, 589 (1954). The other party does not receive the property or an interest therein or an agreement that he will receive the property; he receives the right to call for and receive the property if he so decides. Whitelaw, 3 Ill. 2d at 589. An option contract has two elements: (1) an offer to do something, or to forbear, which does not become a contract until accepted; and (2) an agreement to leave the offer open for a specified time. DiLorenzo v. Valve & Primer Corp., 347 Ill. App. 3d 194, 200 (2004). An option contract must be supported by sufficient consideration; if it is not, it is merely an offer that may be withdrawn at any time prior to a tender of compliance. DiLorenzo, 347 Ill. App. 3d at 200.

Here, the parties signed the agreement, and Chamberlin and Dorigan signed the preprinted "Multi-Board Residential Real Estate Contract 4.0"; however, The Terraces never signed the real estate contract. What the parties had was an agreement that Chamberlin and Dorigan would not sell the property to anyone other than The Terraces, at least until May 1, 2007; this agreement was obtained by The Terraces' payment of $50,000 in September 2006. By paying the second installment of $50,000, The Terraces could extend the agreement to August 1, 2007. The Terraces was not required to buy the property but had the right to buy it, pursuant to the agreement and the real estate contract, for the agreed-upon price of $1,750,000. Chamberlin and Dorigan were required to leave

the offer to The Terraces open for the specified periods, based on the payment of cash. However, they could not require The Terraces to take title to the property.

The Terraces argues that the agreement does not contain terms generally found in an option contract. The Terraces finds the fact that the word "option" does not appear anywhere in the agreement to be a "fundamental flaw" in the theory that the agreement was an option contract. However, as The Terraces later notes, even the title of a document is only probative, not controlling (see The Prime Group, Inc., 215 Ill. App. 3d at 1071); we must look to the actual meaning of the words included in the agreement. Here, the agreement is unambiguous. The $50,000 payments gave The Terraces the right to purchase the property for $1,750,000 up to August 1, 2007. In exchange for those payments, Chamberlin and Dorigan left open their offer to sell the property to the Terraces and gave up the right to sell the property to anyone else during that period. The Terraces had the right, but never the obligation, to purchase the property. Chamberlin and Dorigan forbore the right to sell the property to anyone else for approximately 11 months, as long as The Terraces made the required payments, but they could not require the purchase of their property. While the agreement used the term "sale contract" and did not use the word "option," the implications of the agreement's terms were clearly and unambiguously those of an option and not those of a sale. The agreement was also unambiguous that, once paid, the $50,000 installments were "NON-REFUNDABLE." Therefore, our review of the pleadings discloses no genuine issue of material fact. Chamberlin and Dorigan were entitled to judgment as a matter of law, and we find no error here.

The Terraces next contends that the trial court erred in dismissing count II of its second amended complaint in which The Terraces sought recovery under the Act (765 ILCS 77/1 et seq. (West 2006)). The Act applies, with certain exceptions, to:

"any transfer by sale, exchange, installment land sale contract, assignment of beneficial interest, lease with an option to purchase, ground lease, or assignment of ground lease of residential real property." 765 ILCS 77/10 (West 2006).

It requires the seller of residential property to complete and deliver to a prospective buyer a written disclosure (765 ILCS 77/35 (West 2006)) regarding the seller's awareness of various problems with the property, including flooding, leaking, and sundry material defects. The disclosure is to be delivered "before the signing of a written agreement by the seller and prospective buyer that would, subject to the satisfaction of any negotiated contingencies, require the prospective buyer to accept a transfer of the residential real property." 765 ILCS 77/20 (West 2006). If the seller "fails or refuses to provide the disclosure document prior to the conveyance of the residential real property," the buyer has the right to terminate the contract. 765 ILCS 77/55 (West 2006).

The construction of a statute is a question of law, to which we apply de novo review. Skarin Custom Homes, Inc. v. Ross, 388 Ill. App. 3d 739, 743 (2009). The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent; to determine that intent, we look first to the language of the statute. Skarin Custom Homes, 388 Ill. App. 3d at 743. When the statute's language is clear, it must be applied as written without resort to aids or tools of interpretation. Skarin Custom Homes, 388 Ill. App. 3d at 743.

Clearly, the Act did not apply in this case. The Act specifically applies to the "transfer *** of residential real property" by various listed methods. 765 ILCS 77/10 (West 2006). Significantly, an option contract is not one of the enumerated methods of transfer. This is so because an option contract, by definition, does not involve the transfer of property or an interest therein. See Whitelaw, 3 Ill. 2d at 589. The Terraces argues, inversely, that option contracts are not included in section 15

of the Act, which provides for various exceptions to the Act's applicability. See 765 ILCS 77/15 (West 2006). Thus, according to The Terraces, since option contracts are not specifically included in the list of exceptions, the Act requirements must apply to such contracts. This argument misses the point. Because an option contract does not involve a transfer of any interest in property, it is not subject to the Act and need not be exempted from it. All nine exemptions contained in section 15 begin with the word "Transfers." See 765 ILCS 77/15(1) through (9) (West 2006). However, no transfer of residential real property was effectuated or even set in motion in this case. On July 27, 2007, The Terraces notified Chamberlin and Dorigan that, assuming a valid contract existed, it declared the contract terminated for failure to furnish the disclosure required by the Act. However, The Terraces had not signed the "Multi-Board Residential Real Estate Contract 4.0" or any other document of record requiring transfer of the property. Furthermore, the record does not show that The Terraces had given Chamberlin and Dorigan any indication that it planned to exercise its option and proceed to purchase the property, or that The Terraces had ever requested the disclosure statement prior to attempting to "terminate" the agreement.

The clear language of the Act does not apply to an option contract such as that in this case. Thus, the trial court did not err in granting the motion to dismiss count II.

For these reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

ZENOFF, P.J., and HUTCHINSON, J., concur.