(No. 30637.—

In re Estate of Nancy Frayser.—(W. T. Henry, Admr., Appellee, *vs.* Ada Irwin *et al.*, Appellants.)

*Opinion filed November 18, 1948.*

L. LELAND HAMILTON, and CHARLES DURFEE, both of Golconda, and CLYDE L. FLYNN, JR., guardian *ad litem*, of Elizabethtown, for appellants.

CLARENCE E. SOWARD, of Elizabethtown, RUMSEY & DENNIS, of Harrisburg, and JOHN E. EARLY, of Evansville, Ind., for appellee.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Hardin County directing an administrator to execute and deliver a deed conveying certain real estate of the deceased, as prayed in a petition based on section 252 of the Probate Act. Ill. Rev. Stat. 1945, chap. 3, par. 406.

Nancy Frayser in her lifetime was the owner of a five-sevenths interest in the east one-half of the northeast quarter of section 17, township 12 south, range 9 east, in Hardin County, Illinois. On May 30, 1941, she entered into the following agreement with William L. Skinner:

"This contract and agreement made and entered into this 30th day of May, 1941, by and between Nancy Frayser of Cave-in-Rock Party of the first part and Wm. L. Skinner Party of the Second Part Witnesseth that for and in consideration of $1.00 and other valuable consideration, party of the first part do—hereby lease and let for a term of Five years, to party of the second part the exclusive rights to dig, sink shafts, and mine minerals in, upon and under the herein described real estate with rights to build buildings, roads and with egress and ingress to and over said property and to use said lands to do anything for the successful operations for mining and removing minerals, and the rights to remove all buildings and machinery placed on property by party of the second part, on the following real estate to wit:

My undivided five-sevenths interest in the East ½ of the N.E. Quarter of Section 17, Township Twelve (12) South, Range 9 East, 80 acres.

1. The party of the second part to pay the party of the first part $2.00 per ton for all fluor spar and 10% for all lead, zinc, and any and all other material moved from said property.

2. Party of the second part to have use of timber for mining purposes only.

3. Should party of the Second part desire, this contract may be renewed at its expiration for five years, under the same terms and conditions, if being worked.

4. Should the Party of the Second part elect to purchase the mineral rights in, on and under the above described property the party of the first part agrees to furnish warranty deed with merchantable title with abstract with all conditions on the above real estate described, second party shall deposit $500.00

FIRST STATE BANK OF ELIZABETHTOWN Bank to the credit of the first party. Should party of the first part fail to deliver deed with abstract within thirty days after being notified by registered mail then party of the second part shall have the right to remove and mine all mineral from the property free until the same deed and abstract is furnished by the party of the first part.

5. Royalties are to be paid for all minerals removed from the above described real estate within sixty days.

6. Party of the second part shall have the right to purchase the above described real estate with minerals included for the sum of Four Thousand Dollars payable same as to the title of the above mentioned purchase of said mineral rights.

7. This contract and lease to extend to heirs executors, administrators, and assigns. It is understood that the royalty above named shall include royalty for all interests to be divided as interests appear but purchase price shall apply to grantors interest above. The grantor reserves surface of one-half acre, where family cemetery is.

Parties to assist in leasing pasture for $50.00 per year."

On April 19, 1942, Nancy Frayser died intestate. Thereafter the Alco Lead Corporation, by assignment, acquired the interest of Skinner in the alleged mining lease and real estate contract, and also purchased from two of the heirs of Nancy Frayser, deceased, their respective interests in the real estate in question. On May 29, 1946, the corporation deposited with the First State Bank of Elizabethtown the sum of $4000 to the credit of the heirs of Nancy Frayser, deceased, pursuant to paragraph number 6 of the contract, and on the same day notified the administrator and advised him of its election to exercise the option to purchase. In its letter containing the notice the company requested the administrator to take the necessary steps to obtain authority to execute a deed.

The administrator subsequently filed his petition in the county court, requesting authority to execute and deliver his deed to Alco Lead Corporation conveying the interest

of Nancy Frayser, deceased, in the real estate described in the agreement. All the heirs of Nancy Frayser, deceased, and the Alco Lead Corporation were made defendants. A motion by the heirs to strike the petition was overruled, and after they had filed their answer, a hearing was had and an order entered directing the administrator to execute a conveyance. On appeal to the circuit court the heirs obtained leave to withdraw their answer filed in the county court, and to file a motion to strike the petition. The motion was overruled, an answer was filed, a guardian *ad litem* was appointed, an answer for the minors filed, and a trial was had. At the conclusion thereof the court found that the allegations of the petition were true, and ordered the administrator to execute and deliver a deed to Alco Lead Corporation. The defendants have brought the record to this court for review on direct appeal, a freehold being necessarily involved.

Numerous assignments of error are made, most of which are obviously groundless. The motion to strike, filed in the circuit court, sets forth 22 specific grounds. We shall consider only those we deem necessary to discuss.

It is first asserted that the petition contains no allegation of consideration, that the answer alleges that the contract was without consideration, and that as no reply was filed this allegation stands admitted. This defense cannot prevail here. The contract on its face purports to have been made for a valuable consideration, and it is attached to the petition as an exhibit. Section 36 of the Civil Practice Act declares that the exhibit shall constitute a part of the pleading for all purposes. The provisions of the contract itself therefore constitute sufficient averment of consideration. (*Dickerson* v. *Derrickson,* 39 Ill. 574, 17 C.J.S. sec. 536.) The lease and option agreement is not under seal. The same recites a consideration of "$1.00 and other valuable consideration." Appellants contend the proof shows the sum of $1 was never actually paid. It will

be noted, however, the same recites "and other valuable consideration." The agreement is a combination mining or "prospecting" lease coupled with an option to purchase. It contains many mutual covenants and agreements, as will readily appear from the contract as set out in this opinion and calls for the right to mine and a "royalty" of $2 per ton for all fluor spar and 10 per cent for all lead, zinc, and any and all other material moved from said property. We think it apparent upon the face of the contract the same imports a good and valuable consideration.

Appellants next maintain that the administrator did not file the petition of his own motion but in response to an "application" made to him in the letter from Alco Lead Corporation; and that he thereby assumed a judicial function of adjudging the "application" sufficient. This novel argument merits little consideration. It is a sufficient answer to observe that he filed the petition, an act expressly authorized by the statute. Whether he was induced to do so by the request of Alco Lead Corporation is immaterial. It was the result of a voluntary choice on his part.

It is urged that the corporation, in purchasing the interests of two heirs in the premises, thereby indicated a repudiation or abandonment of the contract on its part. This argument is unsound. The record shows that the corporation acquired the interest of the second heir on the same day it took the assignment of the contract. It is clear that there is not sufficient evidence of an abandonment of the contract. There is no presumption in favor of a waiver of a contract sought to be enforced, nor will this court infer a waiver or abandonment upon slight proof. *Evans* v. *Gerry,* 174 Ill. 595.

Appellants next seek to avoid the contract on the ground that the description of the premises therein is incomplete. It is strenuously urged that the failure to name a county and State, and the reservation of the one-half acre containing the family cemetery, make the description so un-

certain and indefinite as to render the contract void. It is an elementary principle that contracts will, if possible, be made operative to effect the intention of the parties, and this rule applies to descriptions of property as well as to other parts of the instrument. Thus an instrument will not be rendered ineffective for uncertainty in description of premises to which it relates, if by the aid of extrinsic evidence it can be made certain and the property located. We have heretofore declared, with reference to deeds, that "A description omitting the town, county or State where the land is situated may be sufficient if the deed provides other means of identification and particulars of description, and a mere general description as a 'tract' adjoining other lands will be sustained where the land can be identified. (8 R.C.L. 1077.) Deeds are to be construed most favorably to the grantee, and conflicting descriptions should be reconciled, if possible, and the construction adopted which best comports with the intention of the parties. A deed to 'my house and lot,' or to 'one-half of my lot,' may be made sufficient by extrinsic evidence." (*Brenneman* v. *Dillon*, 296 Ill. 140, 148.) These principles are equally applicable to contracts for deeds, leases and leases coupled with options to purchase.

In *Guyer* v. *Warren*, 175 Ill. 328, the premises involved in a contract were described therein as "Our farm in LeClaire's reserve, Rock Island county, and consisting of eighty-three and 31/100 acres, more or less." In holding the description to be sufficient we said: "A deed or other written contract is not void for uncertainty in a description of the land sold or conveyed if, from the words employed, the description can be made certain by extraneous evidence of physical conditions, measurements or monuments referred to in the deed. (*Hayes* v. *O'Brien, supra.* [149 Ill. 403.]) The word 'our' indicates that the farm referred to was a farm owned by the vendors in the contract. The balance of the description showed that the farm

was located in LeClaire's reserve in Rock Island County. It can be shown with certainty what lands the appellees owned within the reserve and county named." In the case at bar the word "My" indicates that the property described was owned by Nancy Frayser. It could then be shown by extrinsic evidence that the only property owned by her and conforming to the description in the contract was situated in Hardin County, Illinois.

The provision that "The grantor reserves surface of one-half acre, where family cemetery is" does not render the description uncertain. The reference to the family cemetery is a sufficient indication of the location of the reserved portion, and distinguishes the present facts from those in *Alleman* v. *Hammond,* 209 Ill. 70, cited by appellants. In that case a deed conveyed a described quarter section of land, "except the south-east corner." In holding the deed void for uncertainty of description we pointed out that the excepted portion "is in no manner described and cannot be ascertained or located from the description in the deed." Here the excepted portion is described as being "where family cemetery is," and can readily be located from that description. We do not, therefore, regard the contract as objectionable for any indefiniteness in the description of the premises.

Appellants argue that the contract is unfair and unreasonable in that the benefits to the alleged lessee are greatly in excess of those accruing to the owner thereunder.

The courts can have no concern with the wisdom or folly of a contract, made for a consideration and without fraud, where the parties are competent to contract and and enter into same fairly and understandingly. Here the parties were *sui juris* and there is no charge of fraud or overreaching. The object of courts of equity, as well as courts of law, is the enforcement of contracts rather than their evasion, and where a valid contract exists for a sale of land a court of equity will enforce it as a matter of

right where it was fairly and understandingly entered into and no circumstances of oppression and fraud appear. (*Miedema* v. *Wormhoudt,* 288 Ill. 537.) The mere fact the value of the property has increased or diminished since the contract was executed ordinarily will not warrant a refusal to carry out its terms, in the absence of circumstances indicating fraud or bad faith. *Anderson* v. *Anderson,* 251 Ill. 415.

Appellants further maintain that the contract was not assignable. In support of this it is stated that the provision "Parties to assist in leasing pasture at $50.00 per year" renders the contract one which calls for personal services on the part of the lessee, bringing it within the rule that a contract for purely personal services is not assignable. We cannot agree with this contention. The contract expressly provides that it shall "extend to heirs, executors, administrators, and assigns." The exception to the general rule that ordinary business contracts are assignable does not apply where the other party has agreed that the contract shall be assignable.

Appellants also argue that section 252 of the Probate Act, under which the petition was filed, does not apply to contracts which are wholly executory. That section reads as follows (Ill. Rev. Stat. 1945, chap. 3, par. 406) : "When a decedent has contracted to convey real estate or interest therein and dies before all of the conditions of the contract are complied with the executor or administrator may file a petition in the probate court which issued his letters praying that he be allowed to execute an instrument of conveyance to the purchaser conveying to him the real estate or interest therein that the decedent agreed to convey by the contract. If an executor or an administrator fails to file the petition as provided herein upon application of any interested person and proper showing the court may enter an order directing the executor or administrator to

file it." This section clearly applies to contracts to convey real estate, whether wholly executory or partly executed.

The language of the statute, appellants contend, restricts the right to its procedure to cases where "a decedent has contracted to convey;" that the decedent had merely granted to Skinner a right to accept her offer of sale, which could become a contract to convey only when accepted by the offeree; and that the decedent had not contracted to convey but had merely granted an option to purchase, which option was not exercised until after her death.

In *Keogh* v. *Peck*, 316 Ill. 318, where an option to purchase coupled with a lease was specifically enforced and the assignee of a long-term lease was held to have properly exercised an option to purchase, we said: "An option contract differs from a sale of lands and an agreement to sell lands. A sale of lands is the actual transfer of the title from grantor to grantee by an appropriate instrument of conveyance. An agreement to sell lands is a contract to be performed in the future, and if fulfilled results in a sale. An option, originally, is neither a sale nor an agreement to sell. It is simply a contract by which the owner of property agrees with another person that he shall have the right to buy his property at a fixed price within a time certain. The owner does not then sell his land or any interest in it. He does not then agree to sell it, but he does then sell the right or privilege to buy at the election or option of the other party. The second party gets, *in praesenti*, not lands or an interest therein, or an agreement that he shall have lands, but he does get something of value,— that is, the right to call for and receive lands if he elects." While it is clear that Nancy Frayser had not contracted presently to convey real estate or any interest therein, she had contracted to convey by giving an option to purchase which, when supported by consideration, could be exercised after her death so as to bind her heirs as recited in the contract.

In *Keogh* v. *Peck,* we said: "An option agreement, contained in a lease, to purchase the leasehold premises concerns the land and the estate conveyed by the lease and the mode of the enjoyment of the demised premises. If the lessee exercises his right of option and purchases the leased premises then the estate conveyed to him by the lease is terminated, and he enjoys the use of the premises not as a tenant but as the owner of the fee. Such an agreement would ordinarily be of benefit, rather than detrimental, to the demised premises, as a tenant having an option to purchase would be more likely to place improvements upon the premises and maintain the place in good repair than one who had not such an option agreement. If the option to purchase is not exercised by the tenant then these betterments would inure to the benefit of the landlord. The contract in this case was one which runs with the land, was assignable, was for a valuable consideration, was beneficial to the reversion, was a complete contract, and being an executed contract it did not lack mutuality, and was of such a character as would be enforced by specific performance in a court of equity unless void for other reasons."

At the time of the execution of the contract, the appellee obtained no title, legal or equitable, and the rule in this State is that no interest in land is created in the holder of the option by an option agreement, but the optionee did then presently obtain by said contract a right to obtain such right or interest at any time during the life of the lease. *Keogh* v. *Peck,* 316 Ill. 318.

An option contract is an executed unilateral contract, not an executory one. Yet the provisions of the same may be made bilateral and executory at any time during the life of the contract. This, the assignee of the contract proceeded to do and, in all respects, complied with the provisions thereof. True, the option was exercised after the death of the owner, but the same, by its express terms, was

made binding upon the heirs, executors, administrators and assigns thereof. It was an agreement "to convey" real estate in the future, upon the exercise of the terms and conditions as therein provided, and by the election to purchase and compliance therewith, as provided, the heirs became bound to surrender the title to the purchaser, upon proper application therefor. To hold otherwise would be to say that all options to purchase contained in such leases must be exercised during the lifetime of the owner granting the option, and we do not believe this to be a proper statement of the rule.

The contract in this case ripened into an obligation to convey by the exercise of the option. (66 C. J. 497.) It was binding by its terms upon the heirs. It was a covenant running with the land. (35 C. J. 1039; *Hayes* v. *O'Brien*, 149 Ill. 403, 23 L. R. A. 555.) It became a contract specifically enforceable. We hold it was a contract to convey real estate within the language, meaning and purview of section 252 of the Administration Act. The judgment of the circuit court will therefore be affirmed.

*Judgment affirmed.*