BERNARD ALLEN FRIED et al., Plaintiffs and Intervening Defendants, v. HENRY BARAD, Defendant and Intervening Defendant-Appellant (Rudy Martinez, Intervening Plaintiff-Appellee).

First District (2nd Division)   No. 86—3518

Opinion filed October 25, 1988.

384

Mccracken & Walsh, of Chicago (Thomas J. McCracken, Jr., and Thomas G. Moffitt, of counsel), for appellant.

Martin B. Zells, of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Title to the real estate involved in this appeal was transferred to Henry Barad, the intervening defendant-appellant, by way of the underlying partition suit filed by his former cotitleholders, Bernard Allen Fried and Howard Weitzman. Rudy Martinez intervened in the partition action to assert his right to exercise an option to purchase that parcel of real estate from Barad. The trial court determined that Martinez had a valid option. Barad was ordered to convey the property to Martinez in accordance with the terms of the option. There is no dispute regarding the underlying partition. The only issue to be determined on this appeal is the matter of the rights and obligations of intervening plaintiff Martinez and intervening defendant Barad.

The record reveals that in 1980, Barad entered into an *oral joint venture agreement* to acquire, operate and deal in real estate with Bernard Allen Fried and Howard Weitzman. Pursuant to this *oral joint venture agreement*, they acquired the real estate which is the subject of this litigation. On or about November 25, 1980, legal title was placed in a land trust with a local bank as the trustee. The interest of each joint venturer was approximately one-third. Their respective beneficial interest in the land trust was held in the name of various nominees, but they reserved the power of direction. Weitzman, Fried and Barad *orally agreed* that Weitzman be authorized to manage the property.

The sole purpose of the land trust was to hold bare legal title. It is completely passive and has no function in the operation or maintenance of the property. The *oral joint venture agreement* was the dominant and operating force.

On March 28, 1983, a *written lease* was granted to Martinez as lessee covering this real estate. Fried, a lawyer, drafted the lease; Weitzman signed the lease "as agent not personally." It was for a

term of five years, commencing April 1, 1983, and ending March 31, 1988. It contained an option to purchase.

The first option clause in the lease provided:

"22. The rent shall be $500.00 per month for the first 3 years of this lease, during which time, lessee is hereby granted the option to purchase the property for the sum of $80,000.00, on such terms as the lessor is willing to accept. For the following 2 years, the rent shall be $600.00 per month and the option to purchase shall thereupon be increased to $95,000.00."

The second option clause in the lease provided:

"6. Lessor does hereby give to the said Lessee and his heirs and assigns, the privilege of purchasing on or before the 31st day of March, 1988, the real estate described in Exhibit 'B' attached hereto and made a part hereof, situated in the City of Chicago, County of Cook, State of Illinois; at and for the price as described in Paragraph 22 of the Lease to which this Rider is attached[.]"

Martinez took possession, paid rent and performed all of his covenants under the lease. Obviously, each joint venturer accounted for his share of gains, losses, tax shelters, or other income tax consequences to the appropriate government bodies annually. Therefore, each joint venturer could be charged with knowledge that Martinez was in possession, paid rent, and had a lease. Barad, however, denied the lease.

According to the trial court, Barad testified that he never agreed to the lease and option. His verified answer to Martinez' complaint for specific performance denied the facts of the lease and option and averred that Martinez' lease was invalid because it was not executed by the owner or titleholder or anyone with authority to act thereunder.

An action for dissolution of a joint venture and for an accounting was brought against Barad by Fried and Weitzman. The dissolution and accounting action resulted in a judgment for dissolution and for judicial sale of the real estate. Barad then purchased the real estate at the judicial sale on March 21, 1985.

On January 22, 1986, Martinez intervened in that action seeking specific performance of the option to purchase. Barad objected on various grounds. After a bench trial, judgment was entered in favor of Martinez. Barad appeals.

I

The first question is whether the option is definite enough for specific performance. Barad contends that the phrase "on such terms as

the lessor is willing to accept" is too indefinite for specific performance.

■ To be specifically enforceable, a contract for the sale of land must contain in writing essential contract terms such as the names of the vendor and vendee, a description of the property sufficient to identify it, the price, the terms and conditions of the sale and the signatures of the parties to be charged. (*Santo v. Santo* (1986), 146 Ill. App. 3d 774, 776-77, 497 N.E.2d 492, *appeal denied* (1987), 113 Ill. 2d 585.) The contract's terms must be so certain and unambiguous in all its parts that a court can require the specific thing contracted for to be done. 146 Ill. App. 3d at 777.

■ "[A] contract is sufficiently certain and definite to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do. *** [T]he plain common-sense meaning of the option would prevail." *Welsh v. Jakstas* (1948), 401 Ill. 288, 294-95, 82 N.E.2d 53.

■ In the instant case, the option sets forth the purchase price ($80,000 during the first three years of the lease term, or $95,000 during the last two years), the expiration date of the option (March 31, 1988), the legal description and plat of the optioned real estate, and the vendor's obligation to furnish a title policy and to convey by warranty deed upon exercise of the option. In addition, the option identified Martinez as the vendee and the "lessor" as vendor. The lessor is identified in the lease as "Howard Weitzman, Agent of Owners," and the lease and option are signed by Weitzman "as agent not personally."

Although the option states "on such terms as the lessor is willing to accept," other jurisdictions have construed similar language to establish an enforceable option to purchase.

For example, "terms of the sale to be determined later" was held to be surplusage in *Walters v. Burnett* (1958), 228 Ark. 1064, 312 S.W.2d 344, where the option contained in a lease identified the property, parties, purchase price, and time limit for exercise. The court stated that "[i]f the parties should be unable to agree upon the terms or conditions, it would simply mean that [optionee] would be required to pay cash for the property in exercising the option." *Walter*, 228 Ark. at 1068, 312 S.W.2d at 347. See also *Morris v. Ballard* (D.C. Cir. 1926), 16 F.2d 175, 175-76 (option to purchase in the lease "on terms to be agreed upon" held to be a stipulation to agree on reasonable terms); *S. L. Jones & Co. v. Bond* (1923), 191 Cal. 551, 554, 217 P. 725, 727 (chattel sale contract on "[t]erms *** [t]o be arranged"

meant method and manner of payment to be arranged).

In light of the foregoing, we find the option to be sufficiently definite for specific performance.

## II

The next question is whether Weitzman had authority as Barad's agent to grant the option. Barad contends that Weitzman did not have actual or apparent authority to grant the option.

■■ The question of authority and agency is one of fact (*Sexton v. Brach* (1984), 124 Ill. App. 3d 202, 206, 464 N.E.2d 284, *appeal denied* (1984), 101 Ill. 2d 577), as is the question of whether one has notice of an agent's lack of authority or is put on notice by the circumstances (*Schoenberger v. Chicago Transit Authority* (1980), 84 Ill. App. 3d 1132, 1138, 405 N.E.2d 1076).

Whether or not Weitzman had the authority to act on behalf of himself, Fried and Barad to execute the lease and option in favor of Martinez is a question of fact to be determined by the trial court.

■■ Barad's testimony was evasive, conflicting and marked by disputes with his own attorney. Fried and Weitzman testified that Barad did grant the authority to Weitzman to manage the property and that Barad was aware of the lease and option. The trial judge, in his findings, noted that he observed and weighed the credibility of the witnesses. He said that Barad's testimony was "totally incredible, unbelievable" and "an outright lie."

Our careful review of the record leads us to the conclusion that the judgment of the trial court is amply supported by the evidence.

## III

Barad's next contentions concern the Statute of Frauds (Ill. Rev. Stat. 1981, ch. 59, par. 1 *et seq.*). He asserts that: (1) even if Weitzman had authority to grant the option, it was not conferred on him in writing and, therefore, in violation of section 2 of the Statute of Frauds (Ill. Rev. Stat. 1981, ch. 59, par. 2); (2) because Weitzman signed the lease and option "as agent not personally," the instrument violated the Statute of Frauds as not identifying the party to be charged; and (3) Barad did nothing to constitute a written ratification of Weitzman's granting the option. Therefore, Barad asserts that the option is void and unenforceable. We disagree.

■■ The purpose and function of the requirement of a writing or memorandum in certain transactions covered by the Statute of Frauds is to aid in the prevention of fraud. (*Grundy County National Bank v. Westfall* (1973), 13 Ill. App. 3d 839, 301 N.E.2d 28, *appeal*

*denied* (1973), 54 Ill. 2d 597.) It was not intended to effectuate or perpetuate an inequity or a fraud. *Shenk v. Continental Illinois National Bank & Trust Co.* (1948), 334 Ill. App. 373, 79 N.E.2d 757, *appeal denied* (1948), 400 Ill. 628.

The dispute between Weitzman, Fried and Barad started this proceeding. It was an action for an accounting and dissolution of an *oral joint venture.* In their dealings among themselves, there was no requirement to send written authorizations to each other. They acquired and operated this real estate without any evidence of writings to each other. The sole purpose of the land trust was to hold bare legal title. It is completely passive and has no function in the operation and maintenance of the property. The *oral joint venture agreement* was the dominant and operating force. Why does Barad find it suddenly necessary that Wietzman have written authorization to enter into the lease with Martinez on behalf of the joint venture? Martinez took possession, paid rent and performed all of his covenants under the lease. Obviously, each joint venturer accounted for his share of gains, losses, tax shelters or other income tax consequences to the appropriate government bodies annually. Therefore, each joint venturer could be charged with knowledge that Martinez was in possession, paid rent, and had a lease. Weitzman and Fried admitted that Martinez had a valid lease and option, and the trial court specifically found that Barad knew of the lease and option and acquiesced in and approved it. Under these facts, the Statute of Frauds does not apply.

The record shows that Barad purchased the property at the judicial sale dissolving the joint venture for the sum of $30,000. His fellow joint venturers received approximately $10,000 each. Martinez now seeks to exercise his option to purchase the property for the sum of $80,000.

By ordering specific performance, the trial court forced Barad to take a gross profit of $50,000. His joint venturers, who concede that Martinez has a valid option to purchase the property, merely made a gross profit of $10,000 each. Barad was not treated inequitably.

Following Barad's position would inflict irreparable harm upon Martinez and result in an erroneous application of the Statute of Frauds. Martinez faithfully paid rent, made improvements, and performed all of the covenants of the lease. The owners accepted the benefits of his performance. it is well established that under these circumstances, the Statute of Frauds cannot be interposed as a defense. (*Regan v. Grady* (1931), 343 Ill. 423, 175 N.E. 567.) "Indeed, to give the statute that construction, would be perverting it from the use for which it was intended, that is, a shield to guard against fraud and

perjury, and would be converting it into a sword with which to wound Justice in her own temple." *Interstate Co. v. Bry-Block Mercantile Co.* (W.D. Tenn. 1928), 30 F.2d 172, 176.

The authorities cited by Barad do not support his position that the Statute of Frauds applies in spite of the fact that he knew of the existence of the lease and the option from the beginning and accepted the benefits of the lease.

## IV

Barad also contends that because the option failed to disclose the fact the title to the real estate was held in a land trust or that the purported optionors were beneficiaries thereof, the option did not comply with the requirements in *Madigan v. Buehr* (1970), 125 Ill. App. 2d 8, 260 N.E.2d 431, and is therefore void and unenforceable. We disagree. The case cited by Barad does not support this contention. (125 Ill. App. 2d 8, 260 N.E.2d 431; see *First National Bank v. Oldenburg* (1981), 101 Ill. App. 3d 283, 287, 427 N.E.2d 1312, *appeal denied* (1982), 88 Ill. 2d 550.) *Madigan* does not attempt to establish steadfast rules for conveying trust property but seeks to remove "some of the makebelieve which hovers over land trusts" and permit "a realistic approach to the disposition of trust property." *Madigan*, 125 Ill. App. 2d at 17.

■■ ■ As we have previously noted, the sole purpose of the land trust was to hold bare legal title. It is completely passive and has no function in the operation or maintenance of the property. The joint venturers reserved the power of direction and Weitzman had authority on behalf of the joint venturers to enter into the contract with Martinez. Under the facts of this case, failure of Weitzman to inform Martinez that the title of the real estate was held in a land trust or that the optionors were beneficiaries thereof should not work to the advantage of Barad.

> "The object of courts of equity, as well as courts of law, is the enforcement of contracts rather than their evasion, and where a valid contract exists for a sale of land a court of equity will enforce it as a matter of right where it was fairly and understandingly entered into and no circumstances of oppression and fraud appear." *In re Estate of Frayser* (1948), 401 Ill. 364, 371-72, 82 N.E.2d 633.

## V

Barad next contends that even if Barad, Weitzman, and Fried were coventurers in an enterprise that contemplated a sale transac-

tion, the option did not comply with partnership law requirements for conveying partnership real estate.

■■ Under section 10(4) of the Uniform Partnership Act, if title to real property were in a third person in trust for the partnership, a conveyance by a partner in the partnership name or in the partner's own name would pass the partnership's equitable interest if the conveyance were within the partner's actual or apparent authority. (Ill. Rev. Stat. 1981, ch. 106½, par. 10(4).) Because Weitzman signed the option "as agent not personally," Barad contends that the statutory conditions were not met and the conveyance is void.

■■ However, an option is not a sale or a contract of sale and conveys no legal title. (*Harwood v. Harwood* (1952), 412 Ill. 131, 135, 105 N.E.2d 719; *Gaskins v. Walz* (1951), 409 Ill. 40, 42-43, 97 N.E.2d 798; *In re Estate of Frayser* (1948), 401 Ill. 364, 373, 82 N.E.2d 633.) Before acceptance, an optionee has no land or interest in land. *Whitelaw v. Brady* (1954), 3 Ill. 2d 583, 589, 121 N.E.2d 785; 35 Ill. L. & Prac. *Vendor & Purchaser* §5 (1958).

Therefore, the grant of the option is not void by section 10(4) of the Uniform Partnership Act pertaining to real estate conveyances.

## VI

■■ Barad next contends that Martinez did not show his financial ability to exercise the option. Martinez testified that he obtained a loan commitment sufficient to exercise the option. Barad contends this testimony is hearsay and violates the best evidence rule. Barad did not assert these objections at trial and therefore waived them on appeal. *E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 38, 481 N.E.2d 664, 666; 2 Ill. L. & Prac. *Appeal & Error* §211 (1953).

## VII

■■ Barad contends that Martinez waived any right to exercise the option by tendering to Barad a check for August 1985 rent after Barad had declared that he did not recognize the option. Again, Barad did not raise waiver as an issue in the trial court and will not be allowed to raise it for the first time on appeal. *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500, 475 N.E.2d 872.

## VIII

■■ Although not properly an issue in this case, we conclude that Justice Egan has the right, duty and obligation to participate in this opinion as the legally constituted successor to Justice Stamos, who

was appointed to the Illinois Supreme Court. "The court remains the same notwithstanding a change in the incumbent judges ***." (*Glasser v. Essaness Theatres Corp.* (1952), 346 Ill. App. 72, 89, 104 N.E.2d 510, *aff'd* (1953), 414 Ill. 180.) "Litigants are entitled to a determination of their case by a legally constituted court—not by particular justices." 346 Ill. App. at 91.

In accordance with the foregoing, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SCARIANO and EGAN, JJ., concur.