SURINDER KAPOOR, Plaintiff-Appellee, v. IRVING ROBINS, d/b/a Kwik Store Sales, Defendant-Appellant.

Second District   No. 2—90—0468

Opinion filed May 30, 1991.

Allen H. Schultz and Jay L. Schultz, both of Schultz & Schultz, of Chicago, for appellant.

Ray & Glick, Ltd., of Libertyville, and Hall, Holmberg, Roach, Johnston

& Fisher, of Waukegan (C. Jeffrey Thut, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Surinder Kapoor, filed a complaint for breach of contract in the circuit court of Lake County against defendant Irving Robins, d/b/a Kwik Store Sales. The case was referred for mandatory arbitration before a panel of arbitrators. Following an award of $4,000 by the arbitrators in plaintiff's favor, defendant filed, pursuant to Supreme Court Rule 93 (134 Ill. 2d R. 93), a timely rejection of the award, and the case proceeded to trial. At the conclusion of a bench trial, the court entered judgment in plaintiff's favor in the amount of $4,000. This appeal followed.

On appeal, defendant contends: (1) that the trial court erred in refusing to allow defendant to file *instanter* a motion for judgment on the pleadings; (2) that the modified contract in question lacked the support of consideration; (3) that plaintiff's failure to reply to the affirmative defenses raised by defendant acted as an admission of the affirmative defenses; and (4) that the trial court erred in permitting proof of consideration for the modified contract where plaintiff failed to plead such consideration in his complaint.

On August 2, 1988, plaintiff entered into a contract with defendant Irving Robins, chairman of the board of Foremost Sales Promotions, Inc., a franchise operation engaged in franchising independent retailers of alcoholic liquor under the trade name "Foremost Liquors." Kwik Store Sales is a division of Foremost. Defendant was to work with plaintiff in finding a location for a liquor store and in helping plaintiff to open the business. For these services, plaintiff paid defendant $5,000 as "a one-time non-refundable retainer fee." At the time plaintiff entered into the agreement he owned a business in New Jersey but wanted to move to the Chicago area.

According to defendant's testimony at trial, he showed plaintiff quite a few franchise locations and arranged six meetings between plaintiff and real estate brokers. It was plaintiff's testimony that when he came to Illinois in September 1988 for a week, defendant met him and showed him one store in Fox Lake with a low volume of sales and then gave him some addresses to look at on his own. Plaintiff was unable to locate any of the locations by the addresses given to him by defendant.

Plaintiff returned to Illinois on October 5 and discussed some locations with defendant, in particular, a location in Carpentersville which consisted of an empty lot. There was some discussion regarding the construction of a store on the site, but the parties could not agree during negotiations.

On October 12 defendant met with plaintiff and his wife. It was defendant's testimony that on that date he was to show plaintiff some more locations. Defendant testified that when he met with plaintiff, plaintiff's wife was crying and stated that she and plaintiff were being criticized by her brother-in-law, who was putting up the money to open the liquor store, and that they needed to give the brother-in-law something to show that defendant was acting in good faith. According to defendant, plaintiff's wife created such a scene regarding the criticism she was receiving from her brother-in-law that defendant signed a modified contract. The modified contract, which was admitted into evidence and which defendant admitted he signed of his own free will, stated:

> "In the event you are not satisfied and do not intend to pursue further for buying Foremost Liquor Store I shall pay back 80% and retain 20% of the deposit."

Defendant testified that after executing this document, he continued to work with plaintiff to find a liquor store franchise. It was defendant's testimony that sometime in December 1988 plaintiff informed him that he had purchased a different type of store. Defendant denied that any conversation occurred on October 12 between plaintiff and him regarding a lawsuit.

Defendant stated that plaintiff had been interested in a Foremost Liquor and Grapery Store. Had plaintiff obtained that type of franchise, defendant could have received from plaintiff $20,000, plus the original $5,000 deposit, as a start-up fee.

Plaintiff testified that when he and his wife met with defendant on October 12, plaintiff explained to defendant that they had not received anything as promised by defendant and that they wanted their $5,000 deposit returned. Plaintiff said defendant told them he would not return their money. As plaintiff began to relate how he responded to defendant's remark, defendant objected, stating that plaintiff was going to testify that he then threatened to sue defendant and that it was this threat which constituted plaintiff's consideration for the modified contract. Defendant argued that plaintiff had failed to allege in his complaint any consideration for the modified contract, that the issues were confined to those raised by the pleadings, and that, therefore, plaintiff could not now bring up his threat of a lawsuit as consideration for the modified contract after having failed to allege that fact in his complaint for breach of contract.

Plaintiff responded that if his complaint was lacking, defendant should have attacked it prior to the arbitration proceeding in a motion to dismiss or to strike. Then, the trial court could have allowed plaintiff to replead.

The court commented that pleadings are to be liberally construed to meet the ends of justice and that the allegations in the complaint were sufficient to place defendant on notice that a second contract existed. The court stated that it would allow testimony regarding consideration. Defendant asked the court to take notice of his continuing objection to any evidence regarding consideration. The court agreed.

Plaintiff continued with his testimony, stating that when defendant told plaintiff he could not return plaintiff's $5,000 deposit, plaintiff informed defendant he would take defendant to court. According to plaintiff, defendant then told plaintiff that if he was not satisfied (with defendant's assistance) after two months, defendant would give him an 80% refund of his deposit. Defendant signed an agreement to this effect.

Plaintiff stated that from October to December he phoned defendant many times, but defendant never showed him a single store. Plaintiff related that at the time defendant signed the modified agreement plaintiff was no longer interested in obtaining a liquor store; he just wanted his money back. Plaintiff said that defendant signed the agreement so plaintiff would still be interested in looking for a store. According to plaintiff, he never heard from defendant again although plaintiff contacted defendant many times, requesting the return of the $4,000, or 80% of his deposit.

Following closing arguments, the trial court found plaintiff's testimony more persuasive than defendant's regarding the question of consideration for the modified contract and the reasons behind the drafting and executing of the agreement. The court determined that there was adequate consideration for the modified agreement, that defendant executed the agreement in good faith, and that by executing it, defendant modified the original contract to provide that he would refund 80% of plaintiff's original $5,000 payment if plaintiff was not satisfied. As plaintiff was dissatisfied and as little appeared to have been accomplished towards finding locations for a franchise, the trial court awarded plaintiff judgment in the amount of $4,000. Defendant appeals.

In his first contention defendant maintains that the trial court erred in denying him the right to file *instanter* a motion for judgment on the pleadings.

■ Defendant's motion for judgment on the pleadings centered on plaintiff's failure to reply to the affirmative defenses defendant raised in his answer to plaintiff's complaint. On the date of trial, defendant presented to the court a motion containing affirmative defense arguments identical to those raised in defendant's motion for judgment on the pleadings. Prior to trial, the court heard the motion and denied it. We

find, therefore, that defendant was not prejudiced by the trial court's refusal to allow defendant to file his motion for judgment on the pleadings since the arguments contained therein were heard by the court either prior to trial or at the hearing on defendant's motion for summary judgment, which was properly presented to the judge prior to arbitration.

Defendant's second contention is that the modified contract lacked the support of consideration. We will, however, consider this contention in conjunction with defendant's final contention that the trial court erred in permitting proof of consideration for the modified contract where plaintiff failed to plead such consideration in his complaint. Instead, we now address our attention to defendant's third contention, that plaintiff's failure to reply to the affirmative defenses raised by defendant in his answer acted as an admission of the allegations therein.

■■ ■ An affirmative defense is a defense which gives color to an opponent's claim but then asserts new matter which apparently defeats the claim. (*Campbell v. White* (1989), 187 Ill. App. 3d 492, 505.) In his answer to plaintiff's complaint, defendant raised three affirmative defenses. Defendant's first affirmative defense stated:

> "Irving Robins is not the sole proprietor of Kwik Store Sales, as alleged in paragraph 3 of the complaint. Kwik Store Sales is a division of Foremost Sales Promotions, Inc., a franchisor."

In his second affirmative defense defendant asserted:

> "Plaintiff did *not deposit* $5,000 with defendant, as alleged in paragraph 6 of the complaint. $5,000 was given to defendant as a *non-refundable* retainer fee." (Emphasis in original.)

Both of these affirmative defenses were not true affirmative defenses. They merely constituted specific reasons to support defendant's denials of the allegations contained in paragraphs 3 and 6 of plaintiff's complaint.

Defendant's third affirmative defense stated:

> "Plaintiff has failed to allege consideration, which is an essential element for a valid complaint."

The defense of failure of consideration is an affirmative defense because the defense impliedly admits the sufficiency of the underlying contract but offers an excuse for defendant's failure to perform. (*Worner Agency, Inc. v. Doyle* (1984), 121 Ill. App. 3d 219, 222.) Here, however, defendant has not alleged failure of consideration. Rather, defendant has merely stated: "Plaintiff has failed to *allege* consideration, which is an essential element for a valid complaint." (Emphasis added.) A proper affirmative defense should have simply stated there was *no* consideration. Thus, defendant's third affirmative defense, like the other two, is

not a true affirmative defense and did not require a reply by plaintiff. Having reached this conclusion, we move on to a discussion of defendant's remaining contentions which relate to the issue of consideration for the modified contract.

Relying on cases from other jurisdictions, which are not binding in this court (*People v. Chandler* (1980), 88 Ill. App. 3d 644, 653), defendant, without any argument, maintains that where an action is founded on a contract, consideration must be alleged in the complaint. In essence, defendant's position, here, appears to be that plaintiff's complaint for breach of contract is legally insufficient. Yet, defendant failed to challenge the sufficiency of the complaint other than by means of a motion for judgment on the pleadings which, as we have determined above, was untimely brought because not brought prior to the arbitration hearing. Defendant's only other challenge to the sufficiency of plaintiff's complaint arose in his third affirmative defense, which we have determined constituted an improper attack on plaintiff's complaint.

Pleadings are to be liberally construed with a view to doing substantial justice between the parties. (Ill. Rev. Stat. 1987, ch. 110, par. 2—603(c).) Furthermore, no pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim which he is called upon to meet. (*Pieszchalski v. Oslager* (1984), 128 Ill. App. 3d 437, 443; Ill. Rev. Stat. 1987, ch. 110, par. 2—612(b).) Here, plaintiff's complaint reasonably informed defendant that plaintiff was suing defendant for breach of contract.

At trial defendant admitted he signed the modified contract of his own free will. Defendant explained that he signed the agreement because plaintiff's wife was distraught about criticism she and plaintiff were receiving from her brother-in-law, who had apparently provided the money for the original $5,000 deposit. According to defendant, he wanted to calm her down, so he signed the agreement. We find it incredible that a man, who was chairman of the board of Foremost Sales Promotions and who, one would assume, possessed a good deal of business sense, would, on the basis of the distraught state of plaintiff's wife, sign a document agreeing to a refund of 80% of plaintiff's deposit if no satisfactory location was found for plaintiff.

Plaintiff testified, over defendant's objection based on plaintiff's failure to plead consideration in the complaint, that defendant signed the modified contract to prevent plaintiff from bringing a legal action against defendant. Plaintiff's testimony indicated that defendant had shown plaintiff a few locations for the proposed franchise and that plaintiff was dissatisfied with defendant's efforts. Plaintiff told defendant he wanted his $5,000 deposit returned, but defendant refused. It was plain-

tiff's testimony that he then threatened defendant with a lawsuit. According to plaintiff, defendant then asked plaintiff to continue to look at stores and, if plaintiff was not satisfied after two months, defendant would refund his money. To avoid any legal action by plaintiff, defendant signed an agreement, the modified contract, to that effect. The consideration, therefore, according to plaintiff's testimony, was plaintiff's forbearance in refraining from bringing any legal action against defendant.

The trial court found plaintiff's testimony more persuasive than defendant's, and we are in agreement. Since forbearance is recognized in a civil action as valid consideration for a contract (*Protective Insurance Co. v. Coleman* (1986), 144 Ill. App. 3d 682, 693), we conclude that the modified contract was supported by consideration.

■ Although there was a variance between the allegations of plaintiff's complaint and the proofs presented at trial, due to plaintiff's failure to plead any consideration in his complaint, the variance was not fatal to plaintiff's cause of action. Such a variance will not be deemed material unless it misleads the adverse party to his prejudice. (*Cummings v. Dusenbury* (1984), 129 Ill. App. 3d 338, 346.) Under the circumstances presented here, defendant cannot say that plaintiff's failure to allege consideration misled him to his prejudice.

Here, the modified contract was executed at the time defendant signed it, and, therefore, the court was justified in determining that it was a valid contract.

Plaintiff testified that defendant never showed him any further stores or locations after the October 12 agreement was made nor did plaintiff ever hear from defendant again. Consequently, plaintiff sought the return of 80% of his deposit, or $4,000. Defendant failed to return plaintiff's money and, in so doing, he breached the modified contract.

In accordance with the foregoing, the judgment of the circuit court of Lake County awarding plaintiff $4,000 is affirmed.

Affirmed.

REINHARD, P.J., and DUNN, J., concur.