**T.L. SWINT INDUSTRIES, INC., an Illinois corporation, and Thomas L. Swint, individually, Plaintiffs,**

v.

**PREMIERE SALES GROUP, INC., a Michigan corporation, and Thomas A. Wright, individually, Defendants.**

No. 96 C 6468.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 10, 1998.

Carrie Jane Fletcher, Neal, Gerber & Ei-
senberg, Chicago, IL, Stephen Todd Bobo,
Daniel G. Nienhuis, D'Ancona & Pflaum, Chi-
cago, IL, for T.L. Swint Industries, Inc.

Thomas A. Wright, Premiere Mfg. Group,
Inc., Northville, MI, for Defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiffs, T.L. Swint Industries, Inc. ("Swint Industries") and Thomas L. Swint, brought suit against the defendants, Premiere Sales Group, Inc. ("Premiere") and Thomas A. Wright, alleging breach of a sales consulting contract, breach of a guaranty contract, fraudulent misrepresentation, and failure of consideration. Plaintiffs move for summary judgment. For the following reasons, the motion is granted.

### Background[1]

Thomas Swint, an Illinois resident, is the President and a primary shareholder of Swint Industries, an Illinois corporation. Thomas Wright, a Michigan resident, is the owner and president of Premiere Sales, a Michigan corporation. (Rule 12(M) Statement ¶¶ 1–4). On September 27, 1992, Swint Industries sold its assets and its plastic injection molding business to Signal Technical Products Corporation ("Signal"). Mr. Wright was a principal shareholder and officer of Signal. At the time of the sale Swint Industries entered into two asset purchase agreements. Under one agreement Swint Industries sold the operating business to Signal and under another agreement Swint Industries sold the plastic injection molding equipment to Premiere Sales. (Rule 12(M) Statement ¶¶ 6–7).

In connection with the sale of Swint Industries, Mr. Swint entered into an Employment Consulting and Non–Competition Agreement with Signal and a Sales Representation Agreement with Premiere Sales. Under these agreements Signal and Premiere Sales were to make monetary payments to Mr. Swint. (Rule 12(M) Statement ¶ 8). At the time of the sale Mr. Wright executed a Guaranty in favor of Swint Industries and Mr. Swint. Mr. Wright agreed to personally guaranty all of the sale agreement obligations of Signal and Premiere Sales. (Rule 12(M) Statement ¶ 10).

In June, 1995, Premiere Sales defaulted on its asset purchase agreement and Signal ceased business operations and entered into an assignment for the benefit of its creditors. At the time of the default in excess of $1.1 million was owed to Swint Industries and Mr. Swint by Premiere Sales and Signal. (Rule 12(M) Statement ¶¶ 11–12). After the default, Premiere Sales and Mr. Wright requested that Swint Industries and Mr. Swint terminate the 1992 agreements and forbear bringing suit the 1992 agreements. (Rule 12(M) Statement ¶ 14–15). In exchange for termination of the 1992 agreements, Mr. Wright proposed that the parties enter into a new agreement called the Sales Consulting Agreement in which Premiere Sales would pay Swint Industries reduced payments of the balance due under the 1992 agreements. (Rule 12(M) Statement ¶ 16).

Mr. Swint agreed to terminate the 1992 agreements on the express condition that Mr.

---

1. Premiere Sales response to Swint Industries' summary judgment motion was due on July 10, 1998. It was never filed. The fact Premiere Sales did not respond to the summary judgment motion does not change the court's inquiry. *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir.1993). It does, however, simplify it. I deem admitted all facts set forth in Swint Industries' Local Rule 12(M) statement because by failing to file a response, Premiere Sales failed to controvert those facts. N.D.Ill. Local R. 12(N)(3).

Wright execute a new Guaranty in favor of Swint Industries and Mr. Swint. The new Guaranty made Mr. Wright responsible for all amounts owed under the Sales Consulting Agreement should Premiere Sales fail to meet its obligations under the Agreement. (Rule 12(M) Statement ¶ 18). After negotiations, Mr. Swint's counsel and Mr. Wright's counsel reached agreement on the final form of the restructuring documents including Mr. Wright's new Guaranty. Mr. Swint believed that part of the consideration for the termination of the 1992 agreements was Mr. Wright's promise to execute the new Guaranty. (Rule 12(M) Statement ¶¶ 21–22).

On October 6, 1995, Mr. Wright's counsel sent Mr. Swint all of the new documents for his signature. Mr. Swint signed the documents and then sent the documents to Mr. Wright for his signature. Mr. Wright signed all of the documents except the new Guaranty. (Rule 12(M) Statement ¶¶ 23–24). Mr. Swint states that absent Mr. Wright's new Guaranty he would never have agreed to terminate the 1992 Guaranty or enter into the Sales Consulting Agreement. (Rule 12(M) Statement ¶ 28).

Under the terms of the Sales Consulting Agreement Premiere Sales agreed to pay Swint Industries $13,000 per month from September 1, 1995, until December 15, 1999. (Rule 12(M) Statement ¶ 31). Premiere Sales December, 1995 payment was short by $6,000. Since January 1, 1996, Premiere Sales has failed to make payments. (Rule 12(M) Statement ¶¶ 31–32). The Sales Consulting Agreement permits Swint Industries, should Premiere Sales default, to "demand full payment of the aggregate remaining Consulting Fee, discounted at a rate of 10% per annum." (Rule 12(M) Statement ¶ 34). Swint Industries demands full payment. According to Swint Industries, Premiere Sales and Mr. Wright owe $723,995.05 plus interest under the Sales Consulting Agreement and the 1995 Guaranty. This figure includes the remaining payments from the Sales Consulting Agreement, attorney's fees, and costs. (Rule 12(M) Statement ¶¶ 35–38).

*Breach of Contract*

 Swint Industries moves for summary judgment against Premiere Sales for breach of the Sales Consulting Agreement. Swint Industries and Mr. Swint move for summary judgment against Mr. Wright for breach of the 1995 Guaranty. To prove breach of contract a plaintiff must show that: (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff performed under the contract; (3) the defendant did not perform under the contract; and (4) damages resulted. *Berry v. Oak Park Hosp.*, 256 Ill.App.3d 11, 628 N.E.2d 1159, 1165, 195 Ill.Dec. 695, 701 (1993). As for the Sales Consulting Agreement, there is no dispute Premiere Sales and Swint Industries entered into the Agreement, that Swint Industries consulted and was paid for its consultation until December, 1995, that since December, 1995, Premiere Sales has failed to make the payments required by the Agreement, and that Swint Industries is owed money from Premiere Sales failure to perform under the Agreement. Premiere Sales has breached the Sales Consulting Agreement. Swint Industries' motion for summary judgment on breach of the Sales Consulting Agreement is granted.

 Swint Industries' and Mr. Swint's motion for summary judgment against Mr. Wright based on the 1995 Guaranty is not as simple. Mr. Wright never signed the 1995 Guaranty. Thus, there is an issue as to whether there was ever an enforceable contract between the parties.[2] Under the Illinois Statute of Frauds:

> No action shall be brought ... whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person ... unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged

2. At one point in this litigation Mr. Wright moved for summary judgment against Swint Industries and Mr. Swint arguing that the 1995 Guaranty was unenforceable based upon the Illinois Statute of Frauds. I denied the motion. *T.L. Swint Industries, Inc. v. Premiere Sales Group, Inc.*, 983 F.Supp. 772 (N.D.Ill.1997).

therewith, or some other person thereunto by him lawfully authorized.

740 ILCS 80/1. In Illinois, the "special promises" section of the Statute of Frauds applies only to collateral promises. An original or independent promise is not covered by the Statute. *Ricci v. Reed,* 169 Ill.App.3d 1062, 523 N.E.2d 1218, 1221, 120 Ill.Dec. 307, 310 (1988). Generally, if a pre-existing debt is owed, a promise to guarantee the debt is considered a collateral promise and falls under the Statute.

■ There is, however, a well settled exception to the Statute that holds that "[i]f an oral promise to pay the pre-existing debt of another be supported by a new and valuable consideration such oral promise is not merely a promise to pay the debt of another it is regarded as an original undertaking." *Oscar H. Wilke, Inc. v. Vinci,* 96 Ill.App.2d 189, 237 N.E.2d 768, 771 (1968) (citation omitted). Accordingly, the promise to pay the debt of another is not subject to the Statute when "the object of the promise is to promote some interest, purpose or advantage of the promisor." *Swartzberg v. Dresner,* 107 Ill. App.3d 318, 437 N.E.2d 860, 865, 63 Ill.Dec. 211, 216 (1982); *accord Ricci,* 523 N.E.2d at 1221, 120 Ill.Dec. at 310 ("If the promisor is a stranger to the transaction, without interest in it, the obligations of the statute are to be strictly upheld. However, if he has a personal, immediate and pecuniary interest in a transaction in which a third party is the original obligor, the courts will give effect to the promise.").

■ In the instant case, Mr. Wright and Premiere Sales owed some sum of money to Mr. Swint and Swint Industries based on the 1992 agreements. Mr. Swint did not bring suit for breach of the 1992 agreements based on Mr. Wright's request that he forego a suit and enter into the 1995 Sales Consulting Agreement and Guaranty contract. In Illinois, forbearance of a legal action is recognized as valid consideration for a contract. *Kapoor v. Robins,* 214 Ill.App.3d 248, 573 N.E.2d 292, 297, 157 Ill.Dec. 874, 879 (1991). Thus, Mr. Swint's forbearance of a civil action based on the 1992 agreements is "new and valuable consideration" that takes the 1995 Guaranty contract out of the Statute of Frauds.[3]

■ Additionally, based on the uncontested facts of this case, Mr. Wright and Premiere Sales owed significant sums of money to Mr. Swint and Swint Industries at the time the 1995 Guaranty contract was executed. Mr. Swint entered into the 1995 agreements in an effort to help Mr. Wright pay off his debt and in lieu of collecting the money owed. It would be inequitable to find Mr. Wright may now avoid the debt altogether. "It is well established in [Illinois] that the courts will not permit the Statute of Frauds, the only purpose of which is to prevent fraud, to be used where the effect will be to accomplish a fraud and if the facts are such that it would be virtual fraud to permit the defendant to interpose the statute, a court will not listen to the defense." *Grundy County Nat'l Bank v. Westfall,* 13 Ill.App.3d 839, 301 N.E.2d 28, 32 (1973); *see also Fried v. Barad* 175 Ill.App.3d 382, 530 N.E.2d 93, 97, 125 Ill.Dec. 175, 179 (1988) ("[The Statute of Frauds] was not intended to effectuate or perpetuate an inequity or a fraud."). Thus, due to policy reasons, the Statute of Frauds is inapplicable in this case.

**3.** While there is no mention of forbearance within the four corners of the 1995 Guaranty, "Illinois courts have generally distinguished between collateral and original promises, not from the particular words used, but from all of the circumstances · of the transaction." *Ricci,* 523 N.E.2d at 1221, 120 Ill.Dec. at 310. Thus, it is appropriate to look beyond the four corners of the contract to determine the consideration. Regardless, Mr. Wright loses the Statute of Frauds argument even if I look at the four corners of the 1995 Guaranty. There is no evidence in either the Sales Consulting Agreement or the 1995 Guaranty of a pre-existing debt. Without evidence of a pre-existing debt in either agreement,

the 1995 Guaranty is an original or independent promise. *See Publishers Adver. Assocs., Inc. v. Wessel Co. Inc.,* 747 F.2d 1076, 1080 (7th Cir. 1984) (finding for the Illinois Statue of Frauds to be applicable "there must be an existing debt at the time of the alleged guarantor's assurances"); *Swartzberg,* 437 N.E.2d at 865, 63 Ill.Dec. at 216 ("The provisions of the [Statute of Frauds] apply to promises, the main purposes of which are to assume or guarantee the debt of another...."); *Raveret–Weber Printing Co., Inc. v. Wright,* 301 Ill.App. 421, 23 N.E.2d 203, 206 (1939) ("[Under the Statute of Frauds], when the promise is made, there must be an existing debt.").

The 1995 Guaranty was an enforceable contract. It is clear that Swint Industries and Mr. Swint performed under the 1995 Guaranty by entering into the Sales Consulting Contract and forgoing suit on the 1992 agreements. It is equally clear that Mr. Wright has not performed under the 1995 Guaranty and that Swint Industries and Mr. Swint are damaged by their inability to collect monies owed them by Premiere Sales and Mr. Wright. Accordingly, summary judgment against Mr. Wright based on breach of the 1995 Guaranty is granted.

### Conclusion

For the foregoing reasons, Swint Industries' and Mr. Swint's motion for summary judgment against Premiere Sales and Mr. Wright is granted. Judgment is entered against Premiere Sales and Mr. Wright in the amount of $723,995.05 plus interest.